JACKSON
vs.
TIERNAN ET AL.

---

### JACKSON vs. TIERNAN ET AL.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

A judgment which is reversed by the Supreme Court, and remanded for
a trial *de novo*, does not settle the rights of the parties and form *res
judicata*.

The assignment of a *part of a debt* will be enforced in the courts of chan-
cery, and by the courts in this state, where the obligation resulting from
the assignment of a part of the debt may be implied from the custom of
trade, or course of business between the parties.

The courts of this state will enforce an equitable right arising in another
state, when the remedy is sought here.

Prescription is interrupted by a suit in the United States Court, sitting
in another state.

This is an action for the sum of two thousand four hundred dollars, being part of the proceeds of a shipment of tobacco, made by Thomas H. Fletcher, of Nashville, to the defendants in Baltimore, and this sum by him assigned to the plaintiff. The facts of the case are these :

"The defendants, Luke Tiernan & Sons, of Baltimore, were factors of T. H. Fletcher, of Nashville, Tennessee. In the course of their business transactions, Fletcher became indebted to them, and to another house, in which Luke Tiernan was surviving partner, in a sum of money exceeding nine thousand dollars. On the 8th of May, 1819, Fletcher, through his agent, Jouett F. Fletcher, shipped at New-Orleans, eighty-one hogsheads of tobacco, on board of the brig Struggle, bound for Baltimore, consigned to Tiernan & Sons. The invoice and bill of lading were enclosed in a letter of advice to Tiernan & Sons, by the Struggle. In the invoice, it was stated that the shipment was made by order of Thomas H. Fletcher, through his agent Jouett F. Fletcher ; and in the bill of lading, that it was for the account and risk of Thomas H. Fletcher, and consigned to Tiernan & Sons."

"A short time before, there had been a like shipment of tobacco, on account of Thomas H. Fletcher, to Tiernan & Sons, by the schooner Mary. The consignment by the Struggle, arrived on the 7th of June, 1819, sometime after that by the Mary had been received. Previous to the arrival of either of these shipments, viz. on the 10th of April, 1819, Thomas H. Fletcher, at Nashville, wrote a letter to Tiernan & Sons, enclosing another to his creditors at Baltimore, informing them of his embarrassments, in consequence of the failure of a house at Nashville, and offering a proposition for the liquidation of their debts. The letter, among other things, stated that his cotton and tobacco at New-Orleans had all been shipped, and advances had on it, and that he had received the money arising from the sales and shipments ; that he held a large amount of good paper of the most unquestionable kind, the greater part of which was then due ; that he offered to give paper of this description

for their claims against him.    He then proposed, that the
creditors should appoint Mr. Ephraim H. Foster, of Nashville,
their agent, to negotiate the business; and added, 'in all
cases such of you as hold my notes must forward them to
Mr. Foster, as they must be taken up when I give him
other paper.'    Tiernan & Sons, on the same day they re-
ceived the letter, accepted the proposition, and wrote a letter
to that effect.    In consequence of this arrangement, Thomas
H. Fletcher, on the 21st of May, 1819, paid to Mr. Foster, in
promissory notes, the claims of the two houses of the Tier-
nans, and took receipts in full from Mr. Foster, as agent.
At the time of this payment and settlement, Tiernan & Sons
did not know of the consignment by the Struggle; but Mr.
Charles Tiernan arrived at Nashville, shortly afterwards,
and expressed his satisfaction at the mode of payment.
At a subsequent period, in July, 1819, this payment and
settlement were rescinded by the parties, and the receipts
given up.

   " On the 21st of May, 1819,  Thomas H. Fletcher, being
indebted to James Jackson, of Nashville, (the plaintiff,) drew
a bill of exchange in his favor upon Tiernan & Sons, as fol-
lows:  'Nashville, May 21st, 1819.  $2400.  Sixty days
after sight of this my first of exchange, second unpaid, pay
to the order of James Jackson, twenty-four hundred dollars,
value received.    Thomas H. Fletcher.    To Messrs. Luke
Tiernan & Sons, Baltimore.'    This bill was presented and
protested for non-acceptance, on the 9th of June, 1819 ; and
was at maturity protested for non-payment.    On the same
day, the bill was drawn, Fletcher drew the following assign-
ment on the back of a duplicate invoice of the shipment by
the Struggle.  'Nashville, 21st of May, 1819.  I assign to
James Jackson so much of the proceeds of the sale of the
tobacco alluded to in the within invoice, as will amount
to twenty-four hundred dollars ; to Ingram & Loyd, as
above, six hundred dollars; and the balance, whatever it
may be, to G. G. Washington & Co.; and Messrs. Tiernan
& Sons will hold the net proceeds of the within invoice
subject to the order of the persons above named, as directed

above. Thomas H. Fletcher.' This assignment was not delivered to Mr. Jackson until the 26th of the same month ; and all persons named therein were creditors of Fletcher."

This case has been litigated in the United States Courts, and a decision adverse to the pretensions of the present plaintiff, was given in the Supreme Court of the United States, in January, 1831. 5 *Peters*, 580. This was a suit at law. The Supreme Court said that he could not recover at law, "whatever might be the case in a suit in equity, brought by the plaintiff *to enforce his equitable claims under his assignment.*"

The present suit was instituted in January, 1838, one of the defendants being in New-Orleans and arrested.

The district judge was of opinion the plaintiff was entitled to recover on his assignment, and gave judgment against the defendants *in solido*, and they appealed.

*Elwyn*, for the plaintiff and appellee, insisted that the judgment should be amended so as to allow interest on the demand, from the time the defendants were in funds.

*Strawbridge*, for the defendants, contended that the assignee of *a part* of a debt, which assignment not having been accepted by the debtor, could not recover. He controverted the passage in 2 *Story's Equity Jurisprudence, number* 1044 ; and also commented on the case of Mandeville *vs.* Welsh, 5 *Wheaton*, 286. See also 5 *Peters,* 393–4.

2. If the assignment did not give Jackson such a title under the laws of Maryland, where it was to be executed and consummated ; or rather if the decree of the Supreme Court of the United States deprived him of the right to sue in his own name, the plea of *res judicata* must prevail, and our courts cannot give him a better remedy or title. *Story's Conflict of Laws, number 565, 566.*

3. But it is said the difficulty is only as to the remedy, not the right or title to the claim ; and that the remedy must be by the laws of Louisiana. If they are to govern, the plaintiff

is no better off, for our laws expressly prohibit the splitting up of debts. *Louisiana Code*, 2149 ; *Pothier on Obligations, numbers* 358, 498.

*Eustis*, for the plaintiff, maintained :

1. The right of the plaintiff to his remedy in equity on the assignment, will be found to be unquestionable.

" If A., having a debt due to him from B., should order it to be paid to C., the order would amount in equity, to an assignment of the debt, and would be enforced in equity, although the debtor had not assented thereto. The same principle would apply to the case of the assignment of a part of such debt." *2d Story's Equity, section* 1044, *p.* 308.

In support of this rule in equity, the very case of *Jackson* vs. *Tiernan*, 5 *Peters* 598, is cited, together with other authorities. See *Pardessus, Droit Commercial, vol.* 2, *sections* 328 and 318.

*Martin, J.,* delivered the opinion of the court.

This is an action to recover the sum of two thousand four hundred dollars, with six per cent. interest per annum, according to the laws of Maryland, *on an assignment,* for a valuable consideration, by one Thomas H. Fletcher, to the plaintiff of this sum, to be paid by the defendants, from so much of the proceeds of a shipment of tobacco made to them by Fletcher, who was indebted to the plaintiff. The latter took this assignment without any other security, against a protested bill of exchange, for the same amount, on being shown the receipts of the agent of the defendants, that Fletcher owed them nothing, and that the consignment of tobacco had actually been made. The assignment was made on the 21st of May, 1819, at Nashville, and the defendants resided in Baltimore. The defendants never consented to the payment of the sum thus assigned, and a suit at law was commenced in the Circuit Court of the United States, for the District of Maryland, by the present plaintiff, against the present defendants ; and finally determined in the Supreme Court of the United States, at the January

EASTERN DIST. term, 1831, adversely to the pretensions of the plaintiff; but
June, 1840. the case was remanded for a *venire facias de novo*.  See the
———————— case in 5 *Peters*, 580 to 601.  The facts of the case reported
JACKSON there, are made evidence in this, by an agreement of record.
*vs.*
TIERNAN ET AL.

The defendants, one of them being arrested in New-
Orleans, pleaded the general issue and prescription ; and
averred, that the matters and things alleged in the petition,
were adjudged and decided in the suit between the same
parties, in the Supreme Court of the United States.

There was judgment for the plaintiff, and the defendants
appealed.

The case before us presents four points, or questions, for
the solution of this court, as follows :

1. Whether the defendants could legally apply the pro-
ceeds of the tobacco, to the discharge of their claim on the
assignor ?

2. Whether the judgment of the Supreme Court of the
United States forms *res judicata*, or not ?

3. Whether the assignment could be enforced in the
Court of Chancery in Maryland ; and, if so, whether it must
be enforced here ?

4. Whether the plaintiff's action is barred by prescription ?

I. It is clear that the defendant's claim on Fletcher, had
been settled before the shipment of the tobacco, and he had
their receipt therefor, which he showed to the plaintiff at the
time of the assignment.  The defendants could not, there-
fore, apply the proceeds of the tobacco to the payment of
this claim.

II. The judgment of the Circuit Court of the United
States for the District of Maryland, was reversed by the Su-
preme Court, and cannot, therefore, form *res judicata ;* and
A judgment if it had not been reversed, it could not have availed the
which is revers-
ed by the Su- defendants, for it was against them, and gave to the plaintiff
preme Court and
remanded for a what he claimed.  The judgment of the Supreme Court of
trial *de novo,* the United States, remanding the case for a *venire facias de*
does not settle
the rights of the *novo*, does not settle the rights of the parties.  It is still open
parties and form
*res judicata.* for further litigation.

III. The counsel for the plaintiff has shown that although the *assignment* of a debt would be disregarded by, or rather would not be enforced *in* the common law courts of the state of Maryland, which is the *locus solutionis*, yet the assignment even *of a part* of a debt would be enforced in the Courts of Chancery in that state: provided the debtor *assented* thereto; or *an obligation*, resulting from the *assignment* of a part of the debt may be fairly *implied from the custom of trade*, or the *course of business between the parties*, as *a part of their contract*. As for example, the deposit of money in a bank; the proceeds of a crop sent by a planter to his commission merchant for sale; or those of a shipment of produce to a consignee or factor in Baltimore, Liverpool or Havre, which is the present case. See the case of *Poydras* vs. *Delamare et al.*, 13 *Louisiana Reports*, 98; *Mandeville* vs. *Welch*, 5 *Wheaton*, 277. See also 2 *Story's Equity Jurisprudence*, section 1044; 3 *Swanston's Reports*, 393; *Tiernan* vs. *Jackson*, 5 *Peters*, 598.

The plaintiff had, therefore, an equitable right, on this assignment, in the state of Maryland. The courts of this state are bound to enforce equitable rights. These rights are to be tested by the *lex loci contractus*, though the remedy here must be sought according to our laws, to wit, the *lex fori.*

IV. The last question is the plea of prescription. The facts show that the assignment was made by Fletcher to Jackson in May, 1819; and suit was commenced in the Circuit Court of the United States for the District of Maryland, in April 1824, and remanded by the Supreme Court of the United States, at its January term, 1831. The suit does not appear to have ever been discontinued, and for aught that we know, may be still pending in that court. The plea of prescription cannot, therefore, avail the defendants.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.