# Fitch, *et al.* Appellants, *v.* Stamps.

The assignee of a judgment will be protected in equity, where the assignment was made for a valuable consideration.

It seems that the statute of this state declaring that, when an order is drawn for a sum of money in the hands of another, the money shall be due to the payee, changes the common law rule of evidence, so as to require the defendant to show a failure of consideration for the order.

When one co-defendant succeeds to the rights of another, they become privies, and their answers in chancery are admissible against each other.

Notice to one partner, in reference to a partnership transaction, is notice to all the members of the firm.

APPEAL from chancery.

Samuel Stamps filed his bill in chancery, against C. L. McGehee, Morgan L. Fitch, and James R. Enloe. The bill stated, that on the — day of April, 1837, defendant, McGehee, placed in the hands of Fitch & Paxton, who were partners in the practice of the law, a note made by J. R. Enloe, on the 24th day of February, 1837; that suit was brought, and judgment recovered upon the note; that on the 1st day of January, 1838, said McGehee drew an order on Fitch & Paxton for the sum of $865, to be paid out of the proceeds of said note, when collected; that he accepted said order in satisfaction of a debt due by McGehee to him; that he notified said Paxton, at the time the order was drawn, of the existence of the order, and that Paxton promised to pay the order, when the money should come into his hands.

The bill further stated, that the order was drawn upon the 1st day of January, 1838, but, by mistake, bore date the 1st day of January, 1837. The bill charged that Fitch & Paxton had notice of the order, through Paxton, and made an exhibit of the order, which was attached to the bill. The bill stated that the judgment was not yet collected, and that McGehee has falsely and

fraudulently transferred the whole claim to M. L. Fitch, and that McGehee is insolvent, and has left the state. The bill did not charge that Fitch had personal knowledge of the existence of the order, but sought to fix notice through his partner, Paxton; that Paxton is dead. The bill prayed for an injunction, and that Enloe be decreed to pay to complainant the amount of said order, with interest, and for general relief.

The answer of Fitch admitted that the note, together with another note upon Enloe, were placed in the hands of his late partner, A. H. Paxton, for collection, by McGehee, and that a suit was brought upon them; that a defence was set up to one of the notes, which was withdrawn by said Fitch, and a judgment taken upon the note specified in the bill, and that at the next term of the court a suit was commenced upon the other note, and judgment recovered. The answer admitted that the judgment had not yet been satisfied. The defendant, Fitch, stated in his answer, that on the 27th day of October, 1838, he purchased said judgment of McGehee, and paid him the full amount of the same, and took a transfer of it. The answer stated the only inducement in purchasing said judgment was, to dispose of Brandon money, which he was fearful would depreciate. The answer further stated, that Fitch, at the time he purchased said judgment and took the transfer, had no knowledge or intimation that such an order was in existence, or that any other person than McGehee had any interest in, or claim to the judgment; and stated that if the defendant, Fitch, had been informed of the existence of said order, that he would not have purchased the judgment.

The deposition of the defendant, Enloe, was taken in this cause. He stated, that on the 24th of February, 1837, he gave his note to defendant, McGehee, for sixteen hundred dollars, payable one day after date. Defendant, Fitch, and his partner, Paxton, as attorneys for McGehee, instituted suit against him in the Holmes circuit court, and on the 27th of January, 1838, judgment was obtained; that Paxton, in the town of Lexington, in a conversation with witness, after judgment was obtained, informed Enloe, that about eight hundred and sixty dollars of the judgment had been transferred by the defendant, McGehee, to Stamps; and the witness stated further, that in the conversation, Paxton, the partner

of Fitch, proposed to witness, that if he would not take the case to the supreme court, (which he was about to do,) he, the said attorney, would give him indulgence in the payment of the judgment, provided Stamps would agree to it.

This conversation took place between the 27th January, 1838, and the third Monday in April of the same year, and that on the same day of the above conversation, he had another conversation with Paxton, the partner of Fitch, and the complainant Stamps, in which conversation "the interest of Stamps in the judgment to the above extent was distinctly admitted and recognized by Paxton, and of which he had full notice, as it was from him deponent learned that any part of the judgment was for the benefit of Stamps." The witness also stated that he saw an order in possession of Stamps for about the above sum, with the name of McGehee to it, in McGehee's hand writing, with which he is acquainted.

McGehee, in his answer, acknowledged he gave the order to Stamps, and showed that it was for a valuable consideration, to wit: in part payment of the consideration of lands which Stamps had sold and conveyed to him. McGehee contended that the title to said land has failed, but of which no proof was produced.

Decree in favor of complainant, and appeal to this court.

G. S. Yerger, for appellants.

It is clear that a mere order on attorney to pay money out of a judgment, is revocable at pleasure by the party, unless it be given on a valuable consideration.

If given on a valuable consideration, and it is accepted, it amounts to an equitable assignment.

If given for a valuable consideration, and not accepted, yet the party as against the judgment creditor has an equity to so much of the proceeds as the order calls for. But in either case, if no consideration is proven, it is manifest that a subsequent assignee will hold it against a voluntary order; or if an attorney had received and paid over the money, he would not be liable, unless assignee showed it was for value.

This order is drawn to be paid out of a particular fund. It is not, therefore, a bill of exchange, and a consideration must be proved. Chitty on Bills, 3.

Fitch *et al.* Appellants, *v.* Stamps.

The answer requires proof as to the value given. There is none in the record, unless the answer of Enloe, a co-defendant, is evidence. Answer of a co-defendant is no evidence, for or against another. Gresley's Eq. Ev. 24, and cases cited.

But, not only a consideration is necessary to constitute an equitable assignment, but the order must be directed to the party having the fund, and must be accepted by him or them. 4 Condensed English Chancery Reports, 573; Williams *v.* Everett, 14 East's Rep. 582.

Suppose, however, that it is proved to be an order for value, and that this of itself constituted an assignment, Fitch has the best right.

The rule that an assignee takes it subject to equities means equities of the parties—not collateral equities. 2 Johns. Ch. Rep. 441, 479; Puckett *v.* Morris, 2 Washington, 255; Norton *v.* Rose, Ib. 233; Mayo *v.* Giles, Adm'r. 1 Mumford, 533.

Fitch had no notice of the assignment; his partner had. This notice would be notice to the partners in all partnership transactions, but not in individual transactions.

To show the absurdity of the argument of notice to one partner binding an individual transaction. Suppose one partner lives in the north, and the other in the south. One is consulted by A as to his equity in land or a judgment; the other purchased afterwards the legal title, without actual notice. Would his partner's knowledge of the equity be his knowledge? Surely not. And yet this is the precise case before the court. The order, if it amounted to an equitable assignment, only vested the equity to $800 of the proceeds. If a third person had purchased it, he would have held it. If Fitch afterwards purchased it, how can his partner's knowledge of the assignment affect him?

The only effect of notice to the partners is, that they shall not pay it to the debtors; but they are bound to pay it to an innocent assignee. And if Fitch purchased without notice, he is an innocent vendee. If they had collected the money, and paid it to McGehee, they would have been liable, because of the notice; but if they paid it to an assignee without notice, they would not.

There is no proof in the record, unless the answers of co-defen-

dants are evidence, which they are not, that complainant's order was for a valuable consideration. He is complainant, and must make out his case. The answer calls for proof on this point, and *none is given.* That he must prove it, even in promissory or negotiable instruments, as against defendants. 12 Wend. 484; 1 Hall, 562; 13 Louisiana Rep. 76.

Thompson, for appellee.

It is not necessary to cite authorities to show that the proper remedy, if complainant, Stamps, has right, is to be sought in a court of equity; however, as an objection was attempted to be raised by the defendant, Fitch, in the court below, to the remedy sought, we cite 2 Story's Eq. 308, 308.

On the subject of assignment of choses in action, that no particular form is necessary, that it may be done by parol, as well as in writing, that it may be for a part, as well as for the whole debt, &c. &c., we cite 2 Story's Equity, from page 308 to 311.

The bill is filed by Stamps, to enforce his right against his assignor, McGehee, who is endeavoring to prevent him from collecting the sum due to complainant by virtue of said order, and to defraud him, complainant, as the bill alleges, by assigning the whole of said judgment on Enloe to his attorney, Fitch, after the aforesaid assignment of a part of it to complainant. Fitch and the debtor, Enloe, are both made defendants.

In order to obtain the aid of a court of equity against McGehee, the complainant, Stamps, would have to allege and prove that the assignment to him was for a valuable consideration. This is alleged in the bill, and abundantly proven by the answer of McGehee, and the copy of the deed for the land sold to McGehee by Stamps.

That part of the answer of McGehee which endeavors to set up a defence that a part of the land conveyed by Stamps to him did not belong to Stamps, cannot avail him. First, it is purely matter in avoidance, and must be proved. There is no proof whatever in the record in support of this allegation in the answer. Secondly, if it were proven, it is no defence in this suit. The said McGehee would have to resort to his covenants in his deed,

in an action for damages. See Fonblanque, 1 book, page 288, (top) and cases cited in the note; 3 Marshall, 334; 5 Monroe, 3; 3 J. J. Marshall, 583, 701.

So far from McGehee's being allowed to prevent complainant, Stamps, from collecting the money on this order, upon the alleged defect of title in the land, if he had given his note for the purchase money, and was sued on it, he could not enjoin the collection on the ground set up in his answer to defeat the recovery of the money on this assignment, as the above cited authorities prove.

It is clear, then, that complainant has proven a good case against the assignor McGehee, and shown as against him, as the bill of complainant states, that complainant gave to him a fair and valuable consideration for the order.

Mr. Fitch contends that he is a fair and bona fide purchaser of the judgment on Enloe, without notice of the order which had been given to complainant Stamps; that the judgment having been assigned to him, his equity being equal to complainants, and indeed superior, and having the law on his side, the court will not disturb him. We do not understand what is meant by his having the law in his favor. The assignment to him, if even for a valuable consideration, of which we will presently show there is no evidence, only gives him an equity, which is junior to the equity of complainant, and therefore inferior; his being the lawyer to collect the claim, certainly does not give him the law in the sense meant by the books; he is the mere mandatory, subject to the order of his client.

The counsel for Mr. Fitch contends that complainant cannot recover against him, because there is no competent evidence against him that complainant gave a valuable consideration for the order, the answer of McGehee not being legal evidence against his codefendant.

To this defence we oppose three several grounds, either one of which if tenable, is a sufficient refutation:

1st. We say there is no proof in the record, (except the answer of McGehee, which Mr. Fitch contends is not proof,) that ever Fitch paid any consideration for the assignment to him; and Stamps has established beyond controversy, as between him and

McGehee, that he did pay a full consideration for the order and assignment to him. Fitch then stands in the attitude of a volunteer, and cannot defend against the elder equity of Stamps, proven between him and the assignor to be for a valuable consideration.

2d. We contend that a consideration as against Fitch, is proven by competent evidence to have been given by Stamps to McGehee for the order and assignment to him. This may be proven, like any other fact, by circumstances, as well as by positive evidence. Here is McGehee taking sides with Fitch, insisting that the money should be decreed to him, Fitch, and resisting the claim of Stamps on the ground that the consideration he had given him for the order had failed, to wit, that the title to a part of the land had proved to be defective, (of which failure of title he has no proof,) and the deed made by Stamps to him for this identical land as described in his answer, is filed and copied in the record. Can any one doubt, then, that Stamps did give a full consideration for the order and assignment to him by McGehee?

3d. We insist that as against Fitch it is not necessary for Stamps to prove a consideration, he having established it against McGehee. This brings up the question how far Fitch is affected as a lawyer with the notice which his partner Paxton had of the order to Stamps, and how far he is affected and bound by the recognition of Stamps' right under his order, made by his partner Paxton, and the positive agreement of Paxton, as proven by the deposition of Enloe, to be governed by the wishes of Stamps in relation to the collection of the judgment on Enloe, and to give indulgence or not, as he Stamps might direct or agree to; recognizing Stamps as his client *pro tanto* substituted in the place of McGehee. If Paxton, after all this, had taken an assignment of the judgment on Enloe from McGehee, could he have held it as against his substituted client Stamps; and if Stamps had filed his bill against him and McGehee, could he have put Stamps to proof of the consideration for his order? He had acknowledged the right of Stamps, he had received him as his client; a lawyer cannot purchase a claim adverse to that of his client.

Although there is no proof in the cause that Fitch had actual notice of what had transpired between his partner, Paxton and
42*

Stamps, yet he had that constructive notice which the law fixes and fastens upon one partner from the knowledge of or notice to his co-partner. And Fitch, with this notice growing out of the partnership, could not purchase a claim adverse to the right of Stamps, any sooner than his co-partner, Paxton, could.

The collecting and paying over money comes within the scope of a law partnership. This was a transaction for the collection and paying over money. The knowledge and agreement of Paxton was the knowledge and agreement of his partner, Fitch.

Upon the argument of Mr. Fitch and his counsel the members of a law partnership would have privileges and advantages unknown to co-partnerships generally. They would receive all the benefits to be derived from the association without being subjected to any of the disadvantages, which would not be just to the community.

In contemplation of law, all the partners are a unit. What is known to one partner is *conclusively* known to the other, or the rest, in all matters falling within the sphere of the partnership. They cannot contract and expand, unite and sever, as they may please. They are, during the term of the partnership, one and indivisible. The counsel of Mr. Fitch asks, "suppose one partner lives in the north and the other in the south—one is consulted by A. as to his equity in law in a judgment, the other purchased afterwards the legal title without notice—would his partner's knowledge of the equity be his knowledge?" The counsel answers his own question—"surely no."

We answer, according to our understanding of the true principles of the law, "surely yes."

The law takes no heed of the residence of partners; whether they live under the same roof or at points distant from each other, is wholly immaterial. They have chosen to make themselves one, and, in contemplation of law, neither time nor space, during the continuance of the partnership, can separate them.

A different doctrine might lead to inquiries which could not result in satisfactory conclusions, and which doctrine would be fraught with great evil to the community.

For the preservation of the purity of the profession of law, where so great confidence is and must be given by the communi-

ty, we believe it to be highly important to enforce the strict law of partnership in all legal associations.

Mr. Chief Justice SHARKEY delivered the opinion of the court.

It appears, by the bill and answers in this case, that the defendant, McGehee, placed in the hands of Messrs. Fitch & Paxton, who were partners in the practice of law, a note made by James R. Enloe, for collection, on which they brought suit and obtained judgment. Some time afterwards, McGehee, for a valuable consideration, gave to the appellee, Stamps, an order on Fitch & Paxton for part of the proceeds of the judgment when it should be collected, which order was presented to and accepted by Paxton, who afterwards died. After the making and acceptance of this order, McGehee transferred the judgment, by separate assignment, to Fitch, for a valuable consideration. The judgment has not yet been paid by Enloe. On this state of facts, the chancellor decreed in favor of Stamps.

It is now contended that the decree was erroneous; first—because said order was not a bill of exchange, and that the consideration must therefore be shown, and without such consideration it was revocable at pleasure; and second—that Fitch, being an innocent assignee for a valuable consideration, must be preferred.

This order was not a bill of exchange, because it was payable out of a particular fund on the happening of a contingency. But the authorities abundantly show that it was an equitable assignment of so much of the fund, and that in equity the assignee is entitled to protection, even though the bailee or debtor had not assented thereto, and clearly it is such an assignment when he has assented. 2 Sto. Eq. 308, 311; 1 Vesey, jun. 280; 3 Swans. 393; 5 Pet. 598. This doctrine is indeed freely admitted by the counsel for appellants, but it is said, and as we think very properly, that such assignment must be made on a valuable consideration; and it is also said that the consideration must be proved. If there was no consideration, there could be no equity. On this branch of the subject it only remains to examine whether proof of the consideration should be made, and if so whether it is sufficiently proved. The statute declares that when orders are drawn by one

person on another for any sum of money in the hands of that other, the money therein specified shall be due and payable to the payee, and he may sue the maker, or the acceptor if it be accepted. It has generally been considered that this statute has changed the rule of the common law in this, that instead of requiring proof of the consideration, the *onus* is changed, and the defendant will be required to show a failure of consideration. Now, if this be an order within the meaning of the statute, equity would follow the law in regard to the proof, and we are inclined to regard it as an order within the meaning of the statute. Suppose Fitch and Paxton had accepted, and an action at law had been brought, would the plaintiff have been bound to produce proof of consideration? and if he would not at law, why is it required in equity in enforcing the assignment? But as we do not wish to rest the case exclusively on this point, it will be proper to look to the evidence in the record.

The bill alleges positively that a valuable consideration passed for the order. The answer of McGehee admits that it was given as part of the purchase money for a tract of land, to which he also says Stamps had no title. This however was matter in avoidance, and required proof. If this answer is to be taken as testimony against Fitch, the consideration is sufficiently proved; but it is insisted that the answer of one defendant is not evidence against his co-defendant. This in general is true, but the rule is not without exceptions. An exception exists where one succeeds to another, so that the right devolves on the successor; they then become privies, and the answers are admissible against each other. 9 Wheat. 738; Osborn *v.* U. S. Bank. This was the case here; Fitch claims to have succeeded to all the rights of McGehee, and the answer of McGehee must be competent to show what and how he assigned, and under this rule we must regard it as proper to show the interest of Stamps.

It is also insisted that Fitch was an innocent assignee without notice. The deposition of Enloe shows that Paxton, one of the partners, had been apprized of the transfer. He stated to the witness that about eight hundred dollars of the judgment had been transferred to Stamps. This proof sufficiently establishes the alle-

gation that Paxton had promised to pay the amount over to Stamps. He considered Stamps the true owner, and would not stay the execution without his consent.    This order was drawn on the firm in reference to a partnership transaction, and the acceptance of one partner was binding on the other; and a notice to one partner is notice to the other.

The decree must be affirmed.