### WINKLEY *v.* FOYE.

A party who deposits money with another, to be appropriated for the benefit of a third person, being under no legal obligation so to appropriate it, has a right to countermand the appropriation, and recall the money at any time before it has been actually appropriated, or before such an arrangement has been entered into between the depositary and the person for whose benefit it was deposited, as creates a privity between them, and amounts to an appropriation of it. Any thing short of this is immaterial and unimportant, so far as concerns the depositor's right to recall and recover back his money.

The admission of incompetent testimony, although immaterial, may be good cause for setting aside a verdict, where the court can see that it was calculated to excite prejudices, or raise false impressions, and thus mislead the jury.

ASSUMPSIT, to recover the sum of thirty dollars for so much money by the defendant received for the plaintiff's use.

It appeared that in January, 1848, a suit had been commenced by Foye against Samuel Leighton, a son-in-law, and Mark H. Winkley, a son of Paul Winkley, and that, by reason of that suit, the money now claimed was passed to Foye by Paul Winkley. A trial was afterwards had in that suit, and Foye recovered judgment.

At the trial of the present cause, the ownership of the money and the way and manner and purposes for which it was delivered

to Foye, were controverted questions before the jury. But there was some evidence from which it would be competent for the jury to infer that the money belonged to Paul Winkley, and that he, in his own name, delivered it to Foye, to be applied in that suit, so far as it would go, in full or in part satisfaction of the debt and costs, as the case might be, and that Foye took judgment for the whole amount of his debt and costs, without any deduction. The court were of the opinion that, under such a state of facts unexplained, Foye might be compelled to refund the money to the person who paid it to him, inasmuch as it would have been paid for a particular purpose, and Foye would appear to have unreasonably neglected to apply it to the purpose for which alone he received it. To meet this view of the rights of the parties, the defendant was permitted to prove that, upon the trial of the action against Leighton and Winkley, he offered to apply the money which he had received, so far as it would go, but Leighton and Winkley declined to have it applied in that suit. It appeared that Foye recovered judgment for $44.53 damages, and $196.53 costs, and that no more than $75.56 has been paid upon the judgment; and it also appeared that no request had ever been made to apply the $30 upon the judgment that was recovered ; but the plaintiff did, before this suit was brought, demand the money of the defendant, who replied he did not owe him any money. The jury returned a verdict for the defendant, which the plaintiff moved to set aside because of the admission of said evidence in relation to said offer and refusal.

*Samuel M. Wheeler*, for the plaintiff.

The court were wrong in permitting the defendants to prove any offer on the trial of the action Foye *v.* Leighton & Winkley, to apply the money which he had received, so far as it would go, but that the defendant declined to have it so applied.

The case does not find that the parties had any of them made any appropriation to the time of the trial, and at the trial the court declined to make the appropriation proposed.

No appropriation was then made. The court would undoubt-

edly have made the appropriation, as it would have been their duty to have done, if the circumstances had required it. *Hilton* v. *Burley*, 2 N. H. 196.

The presumption is that the court declined to allow the appropriation to be made without the consent of the other party in that suit.

Unless an actual appropriation had been made previous to a demand by Paul Winkley, and suit commenced to recover it, he is entitled to recover.

A mere offer without an actual appropriation is not sufficient.

The case finds that, after the offer was made, judgment was rendered, execution was issued, and in part satisfied, and yet no endorsement—no appropriation of the money in controversy in this suit.

*Christie & Kingman*, for the defendant.

The money in controversy in this suit was paid by the plaintiff to the defendant, to be applied in full or part satisfaction of the debt and costs of a former suit, then existing between this defendant and the son and son-in-law of this plaintiff, and was received by this defendant to be so applied. The question whether this money, at the time it was paid, actually belonged to this plaintiff or to his sons, was submitted to the jury on the trial of this cause, and found by them against this plaintiff. But to whomsoever it originally belonged, it was paid to this defendant for a specific purpose, and he claims to retain it for that very purpose. Now who has the right to recall the money ? certainly not the sons, on whose account it was paid, so long at least as an unsatisfied execution is outstanding against them ; nor can this plaintiff recall it, unless the defendant refuses to apply it to the purpose for which he received it. Has he thus refused ? The plaintiff proved on the trial that the defendant had taken his execution for the whole amount of the debt and costs recovered in the former suit. This, unexplained, would look like a refusal to apply the money according to his agreement. But on what principle is the explanation to be kept out ? It is strictly rebutting. He offered to apply

it, has never refused to apply it, and still holds an unsatisfied execution more than four times large enough to absorb it. He did not deduct the amount from his judgment in the first instance, because the defendants in that suit refused to have it done ; but he clearly has a right to retain it, to be applied in part payment of that judgment, until his execution is satisfied in some other way.

The evidence objected to was explanatory in fact, and a part of the transaction which the other side had laid before the jury. The main question was, to whom belonged the money in dispute before it was paid to this defendant? And upon this question the evidence objected to was entirely immaterial. If it never belonged to this plaintiff, the conduct of the defendant in relation to it is immaterial, and the evidence could not prejudice him. If it was his money, then this defendant had the right to show that he had always been ready, and has never refused to apply it to the purpose for which it was paid, and particularly so if this plaintiff seeks to recover back the money, on the ground that he has thus refused to apply it.

Fowler, J. Where a consignment or remittance is made, with instructions to pay over the proceeds to a third person, the appropriation is not absolute, for it amounts to no more than a mandate from a principal to his agent. It may be revoked at any time before it is executed, or at least before any engagement is entered into by the mandatary with the third person, to execute it for his benefit; and it will be revoked by any prior disposition of the property, inconsistent with such execution. 2 Story's Eq. Jurisp. sec. 1046, 972, 1036a, 1036b, 1045 ; Scott v. Parcher, 3 Merivale 662, 664 ; Acton v. Woodgate, 2 Mylne & Keen 492.

Where goods are delivered to a bailee to be delivered over to another, if the delivery over is not for a valuable consideration, the bailor, at any time before the actual delivery, may countermand his bailment, and, after such countermand, a delivery over by the bailee will not be good. Story on Bailments, sec. 104 ; Bacon's Abr., Bailment, D.

Where one person remits a bill to another for the use of third persons, it is the right of the remittee to give and countermand his own directions respecting the bill as often as he pleases, and the person to whom the bill is remitted will still hold it, and its amount when received, for the use of the remittee himself, until, by some arrangement entered into by himself with the person who is the object of the remittance, he has precluded himself from so doing, and appropriated the remittance to the use of such person. *Williams* v. *Everett,* 14 East 597.

Until both the party receiving a consignment, or remittance, has done some act recognizing the appropriation of it to the particular purposes specified, and the person for whose benefit it was remitted or consigned has signified his acceptance of the consignment or remittance, so as to create a privity between them, the property or proceeds remain at the risk and on account of the remittee or owner, and subject to his order. *Tiernan & a.* v. *Jackson,* 5 Peters 601.

The case before us finds there was some evidence from which it would have been competent for the jury to find that the money in controversy belonged to the plaintiff, and that he, in his own name, delivered it to the defendant, to be applied in full or part payment, as the case might be, of the debt and costs of a suit brought by the defendant against the son and son-in-law of the plaintiff, but that the money never had been so applied, and that before the commencement of the present suit the plaintiff had demanded the money of the defendant. Now if this were the plaintiff's money, deposited by him with the defendant for a particular purpose, and he were under no legal obligation thus to appropriate it, he had a right to countermand that appropriation of it and recall the money at any time before it had been applied to that purpose, or before such an engagement had been entered into by the defendant with the son and son-in-law of the plaintiff, for whose benefit the money was originally deposited, as created a privity between them, and amounted to an application of it to their use. Any thing less than that was unimportant and immaterial, so far as the plaintiff's right to recall the money, and if

not delivered up on demand, to recover the same in the present suit, was concerned. Until that had been done, the money remained the property of the plaintiff, and subject to his control.

But the court permitted the defendant to show that on the trial of his suit against the plaintiff's son and son-in-law, he offered to apply the money, so far as it would go, but they declined to have it applied in that suit, and it never was so applied. This evidence had no tendency to prove that the plaintiff was not entitled to recover back the money, if it originally belonged to him, for which purpose it seems to have been admitted. The offer to apply it according to its original appropriation by the plaintiff, for the benefit of his son and son-in-law in the defendant's suit against them, having been refused by them, was wholly immaterial, so far as the plaintiff's rights were concerned. Had the son and son-in-law accepted the offer, so as to have created a privity between themselves and the defendant, the testimony showing that fact would have been material and competent. As it was, the defendant might as well have shown almost any other fact in evidence, as this unaccepted offer to apply the money. As evidence to rebut and control the plaintiff's right to recover back his own money, it was clearly incompetent. On that question it was immaterial, and therefore inadmissible. What instructions may have been given in relation to it, does not very clearly appear from the case, but the fact that the question of its admissibility was reserved and transferred, would indicate such importance to have been attached to it, that, in the opinion of the judge who tried the cause, it may have influenced the decision of the jury.

The evidence, then, having been incompetent and inadmissible, although immaterial upon the question on which it was admitted, we think the verdict, which may have been influenced by it, should not be permitted to stand. As well observed by the court in a former decision in this suit, [8 Foster 518] " evidence which has no legitimate bearing may still have an unfavorable influence upon a claim or defence. It may be calculated to excite prejudices, or raise false impressions, and in such cases, its admission

may furnish good ground to set aside a verdict." Such would seem to have been the character of the evidence improperly admitted in this case. It had no legitimate bearing, and whatever the instructions in regard to it may have been, it was well calculated to prejudice the minds of the jury against the plaintiff's right to recover.

*Verdict set aside and new trial granted.*