*J. J. Landrum, for appellants.*
*J. M. Collins, E. H. Smith, for* appellees.

---

### MORGAN, THOMAS & CO. *v.* BANK OF ROME.

**Assignment of Personal Property.**

   Where a bona fide assignment of personal property is made to a bank to secure a debt owing to the bank from the assignor, the bank has the right to the proceeds of a sale of the property sold by a commission merchant as against the assignor or his creditors.

**Attachment by Creditors.**

   Creditors who attach personal property in the hands of a commission man for sale that has been assigned to a bank as security for a debt, acquire but an equity by the seizure of the property, and the bank having an older equity under the assignment has a better right.

APPEAL FROM LOUISVILLE CHANCERY COURT.

December 2, 1876.

OPINION BY JUDGE COFER:

We incline to the opinion that the assignment to the Bank of Rome gave to it an equitable lien on the iron in the possession of Hull, subject, of course, to his prior right to be reimbursed for advances, charges, etc. This case is not analogous to the case of *Phil*

*lips, Reynolds & Co. v. Barbaroux*, 2 B. Mon. 89; or *Tiernan v. Jackson*, 5 Pet. 580.

In the former case the assignment was of only a part of the proceeds of the bagging and rope, "the consignor, Bakewell, retaining the principal interest in the consignment." But even if that had not been the case, and it be conceded that that case is an authority for holding that the assignee had no right to control the consignee in making sale of the consignment, it would not follow that the assignee had not such an interest in the property as would have enabled him to prevent the consignor or his creditors from seizing the goods and selling or disposing of them so as to defeat his right to the proceeds. The question there was not whether the assignee took any interest at all in the goods, but whether he took such interest as not only gave him a right, but made it his duty, as between himself and his assignor, to interfere and control the action of the consignee in making sales. There is certainly an appreciable distinction between the absolute right and duty to take control of a consignment, a part of the proceeds of which is placed as collateral security, and a right to interpose to prevent the assignor, or what is the same thing, to prevent his attaching creditors from defeating the security by putting it out of the power of the consignee to make sales so as to realize proceeds to which the assignee is entitled by the letter of the assignment.

It seems to us that it would be going quite too far to say that although the bank had an unquestioned right to the balance of the proceeds of the sales of the iron, that the assignor might have defeated its right by instructing the consignee to sell only so much as would reimburse him and to hold the residue subject to the orders of the consignor. We cannot doubt but that if such an order had been given the bank might have obtained relief by a proceeding to subject the iron to sale. If we are right in that conclusion, then it follows that the appellants, who have no other or greater right than the assignor had, cannot defeat the claim of the bank by attaching the iron.

*Tiernan v. Jackson,* was based upon facts very similar to the facts of this case, but that was an action of assumpsit for money had and received, to recover from Tiernan the money received for the sale of the tobacco under attachment. Jackson did not have the legal title to the tobacco and consequently could not maintain the action. There was nothing in that case requiring, or even rendering it proper, that the court should express an opinion on the question whether or

not he had an equitable lien on the tobacco, for conceding that he had, the result, in an action at law, must have been the same.

The assignment to the bank of the balance of the proceeds of the iron, after satisfying the claim of Hull, was intended to secure the debt due to the bank from the assignor, and gave the bank a right to such proceeds, and the right to the proceeds carried with it the right to have the iron protected from any act on the part of the assignor, the effect of which would be to defeat the right to the proceeds. The iron was, therefore, beyond the control of the assignor, and after notice of the assignment, Hull held it subject to the terms of the writing, and if he had disposed of it so as to defeat the claim of the bank he would have been liable to it for the loss. Having a right to the proceeds, and consequently a right, enforcible against both the assignor and Hull, to demand that the iron should not be so disposed of as to put the proceeds beyond its reach, the bank had an equitable interest in the iron. The appellants acquired but an equity by the seizure of the iron under the attachments. *Newby & Taylor v. Hill & Million,* 2 Met. 530. The bank having an older equity under the assignment had the better right.

We entirely agree with the cases cited by counsel that in order to make a valid assignment the assignor must not retain control over the thing or fund assigned; but we do not concur in the conclusion that the assignor in this case retained control of the iron. The whole balance of the proceeds, after satisfying Hull, was assigned to the bank, and the assignor could not thereafter dispose of the iron so as to put its proceeds beyond the reach of the bank, unless the rights of innocent purchasers had intervened.

As respects the charge of fraud in the assignment, we need only remark that the debt to the bank is clearly proved, and that the fact that the assignment may have been made with the design to prefer the bank over other creditors does not render it fraudulent. Nor does the fact that a greater sum was assigned than was actually due prove fraud in fact. It may be a circumstance tending to establish the charge of fraud, but is not alone sufficient for that purpose. That Cathran who made the assignment was president of the bank furnishes strong reason for supposing that his object was to prefer the bank to the other creditors of H. D. Cathran & Co., but no reason whatever for concluding that the transaction was actually fraudulent.

It is not important to inquire whether the firm of H. D. Cathran & Co. was a bona fide partnership or not. No matter how much fraud there may have been in its composition, or in the conduct of its busi-

ness, the appellants can reap no advantage on that account, unless they can connect the bank with fraud in the transaction out of which this contest arose, of which there is no evidence in the record.

Upon a careful consideration of the whole case we are of the opinion that it was correctly decided, and the judgment is *affirmed*.

*Armstrong & Young, for appellants.*
*William Reinecke, for appellee.*