THE SUPERINTENDENT AND TRUSTEES OF PUBLIC SCHOOLS IN TRENTON vs. SAMUEL HEATH and others.

On a bill of interpleader, filed by the complainants against several claimants of the same fund, which fund consisted of a debt due from complainants to a contractor on a building contract, and the object of the bill was to settle and adjust the rights of the several claimants, who are creditors of the contractor, and who presented three classes of claims—

1. Those which are for labor done and materials furnished in the erection of the building, and for which the creditor proceeded to secure his claim by demand and notice under the third section of the mechanics' lien law.

2. Claims of the same character for which the contractor drew orders on the complainants, and which were presented to complainants, but not accepted.

3. Claims for debts due from the contractor other than for work done and materials furnished in the erection of the building, and for which the debtor drew orders upon complainants, which were presented, but not accepted—

Held, that the first class of claimants must be paid in the order and priority in which notice of the demand and refusal was given to the complainants. This is clearly in accordance with the provisions of the third section of the lien law, which gives to each claimant a lien on the amount due from the owner to the contractor at the date of the notice; and it

Superintendent and Trustees of Public Schools in Trenton *v.* Heath.

would seem necessarily to give priority to each claimant in the order of time in which his notice is served, and excludes the idea of a *pro rata* division of the fund among the claimants.

Claims of the second class have no claim on the fund under the provisions of the third section of the lien law. The statutory remedy must be strictly pursued. The statute alters the existing law only so far as its terms require. It cannot be extended by construction. The second and third class of claims are undistinguishable in principle, and stand on the same legal footing.

The orders drawn by the contractor upon the fund in the hands of the complainants, and presented to them, though not accepted, constituted an equitable assignment *pro tanto* of the fund, which will fix the fund in the hands of the debtor, and will be protected and enforced in a court of equity.

Most American courts maintain the doctrine, that a valid assignment cannot be made of *a part* of a debt without the assent of the debtor, which will be enforced against him in a court of law. But it has no application to an equitable assignment sought to be enforced in a court of equity, as against the fund in the hands of the debtor upon whom the order is drawn.

When the debtor has come voluntarily into a court of equity with the fund, and leaves the claims of the contesting parties to be settled between themselves, it does not lie in the mouth of either of the claimants to raise the objection against the assignment of part only of the debt. The presumption must be that the complainants assented to a subdivision of the debt.

All the claimants, as well those whose debts were not on account of the building as those whose debts were contracted in the erection of the building, are entitled to be paid out of the fund, according to the priority of their respective orders and notices.

The parties who have made demand and given notice under the statute are entitled to no priority. The statute confers on mechanics and material men no exclusive or superior right to the fund in the hands of the owner. Each creditor is entitled to be paid in the order in which his notice or order was presented to the complainants.

---

The controversy in this case arose out of the erection of a public schoolhouse in the city of Trenton. The complainants, for whom the building was erected by contract by Henry C. Scott, were indebted to him in the sum of $632.40. Conflicting claims having been made upon the complainants by creditors of Scott, amounting to about $1150, the complainants paid into court the money due from them to Scott, and filed a bill of interpleader against the claimants.

An order of reference was made to a master to ascertain and report the amount of the debt due to Scott from the complainants, and the respective amounts of the several claims of the defendants, and their order and priority.

The case was heard on exceptions to the master's report.

*Beasley,* for lien claimants.

*E. W. Scudder,* for Heath and others.

An order by the debtor in favor of the creditor upon the complainants, and notice to them by presentment, is an appropriation and an equitable assignment *pro tanto,* and the funds are held by the notice. *Watson* v. *Duke,* 1 *Russ. & M.* 602, *note* 1; *Burn* v. *Carvalho,* 4 *M. & C.* 690; *Phillips* v. *Stagg,* 2 *Edw. Ch.* 108; *Hawley* v. *Ross,* 7 *Paige* 103; *Richardson* v. *Rust,* 9 *Ibid.* 243; *Ex parte South,* 3 *Swanst.* 343; *Morton* v. *Naylor,* 1 *Hill* 583, *note a,* 585; *Wheeler* v. *Wheeler,* 9 *Cowen* 34; *Pattison* v. *Hull, Ibid.* 747; *Field* v. *Major,* 2 *Selden* 179; 3 *Lead. Cas. in Eq.* 308, 354–5.

There is a distinction at law between a partial and entire assignment. 5 *Wheaton* 283; 1 *Ibid.* 235; 5 *Pet.* 598.

*Contra* to above cases, *Quinn* v. *Hanford,* 1 *Hill* 82; *Luff* v. *Pope,* 5 *Ibid.* 413.

THE CHANCELLOR. The complainants being indebted to Henry C. Scott, upon a building contract for the erection of a public schoolhouse in the city of Trenton, and there being a variety of conflicting claims, legal and equitable, to portions of said fund, exceeding in the aggregate the amount of their indebtedness, the complainants filed a bill of interpleader, and paid the fund into court, in order that the rights of the several claimants might be adjusted and settled.

By the master's report, it appears that the amount paid into court by the complainants, $632.40, is the whole amount of the indebtedness from the complainants to Scott upon the building contract.

There are a large number of small claims upon the fund,

amounting together to about $1150. Scott, the contractor, is insolvent. A large portion of the indebtedness must be lost. The question is upon whom the loss must fall. The claims are all made by creditors of Scott, the contractor, and consist of three classes.

1. Those which are for work and labor done and materials furnished in the erection and construction of the said building, and for which the creditor proceeded to secure his claim by demand and notice under the third section of the mechanics lien law. *Nix. Dig.* 524.

2. Claims of the same character, for which the contractor drew orders upon the complainants, which were presented to the superintendent of schools, but were not accepted by the complainants.

3. Claims for debts due from the contractor, other than for work done and materials furnished in the erection and construction of said building, and for which the debtor drew orders upon the complainants, which were presented to the superintendent, but not formally accepted.

The master has reported in favor of the first class of claimants to be paid in the order and priority in which notice of the demand and refusal was given to the superintendent. To this part of the report there is no exception. It is clearly in accordance with the provisions of the third section of the mechanics' lien law. The third section of that statute, whatever the design of the framers may have been, gives to each claimant a lien upon the amount due from the owner to the contractor at the date of the notice; and it would seem necessarily to give priority to each claimant in the order of time in which his notice is served, and excludes the idea of a *pro rata* division of the fund among the claimants.

The master has also reported that the claims included in the second class are entitled to be paid in like order and priority, and has excluded the claims in the third class. The report in each of these particulars is excepted to. It is insisted, on the one hand, that the master erred in distinguishing between these classes of cases, and that both classes

of claims should have been rejected, and on the other hand that both should have been allowed.

There would seem, at first view, to be sound reason for the distinction; and looking to the policy of the statute, which gives to the journeyman, laborer, and material man, after a refusal by the contractor to pay his debt, and notice to the owner of the demand and refusal, a claim upon the amount due from the owner to the contractor, that he should have at least an equally strong claim in case the indebtedness is admitted by the contractor, and an order given upon the builder to pay the amount. It must be borne in mind, however, that the statutory remedy must be strictly pursued; that the statute alters the existing law so far, and no further than its terms require, and that it cannot be extended by construction. Whatever seeming justice there may be, therefore, in admitting the validity of the claim in this aspect, it is not warranted by the statute, and would be as inconsistent with its terms as a division of the fund among all the claimants *pro rata* upon the ground that such division would conform more strictly to the general policy of the act.

I think the second and third class of claims are undistinguishable in principle, and both stand upon the same legal footing. Both must be admitted or both rejected.

Before considering these exceptions, it is proper to premise that this suit has been amicably conducted; that no technical or formal objections have been suggested or relied upon, and that the sole design of the parties has been to present for consideration the simple inquiry, to whom, and in what order and priority, the fund should be paid.

The only inquiry therefore is, whether the orders drawn by the contractor upon the fund in the hands of the complainants, and presented to the superintendent, though not accepted by him, constituted an equitable assignment *pro tanto* of the fund.

I present the question in this form, because it is quite clear that if there was an express acceptance, written or oral,

of the order by the complainants the case would be free from all doubt, and because there is, to my mind, no satisfactory evidence in the case that any of these orders were accepted by the complainants. Some of the claimants do indeed testify that their orders were accepted by the superintendent, and that he promised to pay them. But this is expressly contradicted by the superintendent, who denies that he ever accepted or promised to pay any of the orders. He simply stated that there was a debt due from the complainants to the contractor, and permitted the parties to leave the orders with him. In this he is confirmed by a number of the parties while testifying in their own behalf. I am the more confirmed in this view of the evidence from the fact that the superintendent had not authority either to accept the orders or to promise to pay them. He could not, without express authority for that purpose, thus bind the corporation. The case will be regarded, therefore, as if there was no acceptance by the complainants or promise on their part to pay any of the orders.

The simple inquiry then is, whether an order by the creditor, drawn upon and presented to his debtor to pay a sum of money out of a specified fund, constitutes in favor of the payee an equitable assignment of the debt, which will fix the fund in the hands of the debtor, and which will be protected and enforced in a court of equity. It does not appear to me that the question admits of a doubt.

In *Yates* v. *Groves*, 1 *Vesey* 280, one Dawson, being indebted to the plaintiff, drew his order upon Groves and Dickinson, in favor of the plaintiff, to pay the amount due out of the fund of Dawson in the hands of Groves and Dickinson. Dawson, having become bankrupt, the entire fund in the hands of Groves and Dickinson was claimed by the assignee in bankruptcy. Upon a bill filed for the recovery of the amount covered by the order, Lord Thurlow said: "This is nothing but a direction by a man to pay part of his money to another for a foregone valuable consideration. If he could transfer, he has done it, and it being his own

money, he could transfer. The transfer was actually made. They were in the right not to accept, as it was not a bill of exchange. It was not an inchoate business. The order fixed the money the moment it was shown to Groves and Dickinson."

The principle is thus stated by Mr. Justice Story: "If a draft or order is drawn on a debtor for *a part* or *the whole* of the funds of the drawer in his hands, such a draft does not entitle the holder to maintain a *suit at law* against the drawee, except the latter assent to accept or pay the draft." "But the transaction will have a very different operation *in equity*. Thus, for instance, if A., having a debt due to him from B., should order it to be paid to C., the order would amount in equity to an assignment of the debt, and would be enforced in equity, although the debtor had not assented thereto. The same principle would apply to the case of an assignment of *a part* of such debt. In such case a trust would be created in favor of the equitable assignee on the fund, and would constitute an equitable lien upon it." 2 *Story's Eq. Jur.*, § 1043–4.

The authorities in support of the principle are very numerous; nor, so far as it applies to an order for the payment of the *entire debt*, does there seem to be any conflict in the authorities.

In *Mandeville* v. *Welch*, 5 *Wheat.* 277, Mr. Justice Story himself says, in apparent contradiction to the text of his treatise just cited: "In cases where the order is drawn on *the whole* of a particular fund, it amounts to an equitable assignment of that fund, and after notice to the drawee it binds the fund in his hand. But where an order is drawn, either on a general or a particular fund, for *a part only*, it does not amount to an assignment of that part, or give a lien as *against the drawee*, unless he consent to the appropriation by an acceptance of the draft: or an obligation may be fairly implied from the custom of trade, or the course of business between the parties, as a part of their contract. The reason of the principle is plain—a creditor

shall not be permitted to split up a single cause of action into many actions without the assent of the debtor, since it may subject him to many embarrassments and responsibilities not contemplated in his original contract. He has a right to stand upon the singleness of his original contract, and to decline any legal or equitable assignments by which it may be broken into fragments. When he undertakes to pay an integral sum to his creditor, it is no part of his contract that he should be obliged to pay in fractions to any other persons; so that if the plaintiff could show a partial assignment to the extent of the bills, it would not avail him in support of the *present suit*." That suit was an *action at law* by the drawer of the order for the use of the payee against the debtor upon whom the order was drawn. All this reasoning applies to such an action. It presents most clearly and forcibly the ground of the doctrine maintained by most of the American courts, that a valid assignment cannot be made of part of a debt without the assent of the debtor which will be enforced against him in a court of law. But it has no application whatever to an equitable assignment, sought to be enforced in a court of equity as against the fund in the hands of the debtor upon whom the order is drawn.

In *Tieman* v. *Jackson* (5 *Peters* 580), which was also an action at law brought in the name of the payee, the point mainly discussed and decided was, whether the evidence showed such a legal right in the plaintiff that the action would lie in his name; and Mr. Justice Story, in alluding to his opinion in *Mandeville* v. *Welch*, said, that the suit was there brought in the name of the original assignor for the use of the assignee against the *debtor*, and it was unnecessary to consider whether the remedy, if any, was at law or in equity.

The same principle is maintained in *Hopkins* v. *Beebe*, 2 *Casey* 85, where the question arose under similar circumstances.

But whatever difficulty, either at law or in equity, this

c *

objection might present, in an action brought by the assignee of a part of the debt against the debtor, where there had been no presentment or acceptance of the order, it can have no force in the present case. Here the debtor has come voluntarily into court with the fund, and leaves the equitable claims of the contesting parties to be settled between themselves, according to the principles and practice of a court of equity. It does not lie in the mouth of either of the claimants to raise the objection. The presumption must be that the complainants assented to a subdivision of the debt, whatever their original contract may have imported.

All the claimants, as well those whose debts were not for materials, or work and labor furnished or done in the erection of the building, as those whose debts were on account of the building, are entitled to be paid out of the fund according to the priority of their respective orders. The parties who have made demand and given notice under the statute are entitled to no priority. The statute confers upon the mechanics and material men no exclusive or superior right to the fund in the hands of the owner. Each creditor is entitled to be paid in the order in which his notice or order was presented to the complainants.

The master's report must be corrected accordingly.