' The opinion of the Court was delivered by
Eenner, J.
This case presents a triangular contest between three creditors of F. Müchler, over a balance standing to the credit of the lattor’s deposit account with the Union National Bank. ■
*606 1. The Union National Bank claims that the credit was extinguished by compensation, because it (the Bank) was holder of a dishonored draft of Müehler, and has applied the credit to the extinguishment of said debt.
2. The Louisiana National Bank claims it as holder of a check of Müehler on the Union National Bank for the exact amount of the credit, which check had been presented to the Union National Bank and payment thereof demanded, and, on refusal, had been protested, and written notice given to the Union Bank that this was claimed to operate an assignment of the credit.
3. Gordon & Gomila claim.the fund by virtue of an attachment thereof, executed after the above proceedings.
I.
So far as the Union National Bank is concerned, it is not pretended that it had any express authority or consent from Müehler to apply the balance due him as depositor to the extinguishment of the debt due by him to the Bank. It attempts to imply such consent from the fact that one of its own by-laws provided : “All notes discounted by the Bank, which are not taken up before the closing of the Bank, on the last day of grace, shall be charged to the account of the parties to the same, provided.there are funds in the Bank to the credit of such person or persons.”
No evidence is adduced to establish that this by-law was ever assented to by Müehler, or that he was ever even notified of its existence.
Nothing is better settled than that by-laws of a corporation, in order to be valid, must be consistent with the general law, and that they cannot have effect to interfere with the rights and privileges of third parties or strangers, not members of the corporation, or be made binding on them, without their consent. Potter on Corp. § § 75, 76 ; Field on Corp. § § 295, 296: Grant on Corp. pp. 76, et seq.; Angell and Ames, § § 333, 335.
Unless the Bank had the right, under the law of the State, to attribute Miichler’s credit in compensation of the debt due by him, this by-law could not create such right.
In the case of Hancock vs. Citizens’ Bank, we said: “ Repeated adjudications in the jurisprudence of this State have placed beyond the domain of further controversy the principle that compensation does not take place in the confidential contracts arising from irregular deposits, such as the deposit of money with a banker, and the depositary is not authorized to apply the funds on deposit in his hands to the payment of the debts of the depositor, except there is a special mandate from him.” 33 A. 592, quoting 12 A. 257; 7 A. 53; 2 A. 25; 11 A. 73; 23 A. 116.
*607 The vehemence of the assault now made upon the correctness of this doctrine is not, in our judgment, sustained by a corresponding force in the arguments advanced against it, with whatever learning and power they are enforced. The distinction sought to be drawn between the irregular deposit of the customer with his factor and that of the depositor with the bank, has no existence ; or, if there were any, it would be in favor of the latter, so far as the prohibition of compensation is concerned, because, while the factor usually allows his customer interest 011 sums left in his hands, the bank has the gratuitous use thereof. Those decisions, therefore, which forbid compensation in the relation of the factor and customer, may be said to apply, a fortiori, to the relation of bank and depositary. Moreover, in the earliest case of Bloodworth vs. Jacobs, 2 A. 25, Chief Justice Eustis repeatedly refers to the relation of banker and depositary, in illustration of liis views as there expressed. In that case and in Breed vs. Purvis, 7 A. 35, the very arguments now urged were stated in the opinion of the Court and overruled.
The extensive references to common law authorities, establishing that the relation of banker and depositor, like all other irregular deposits, created the relation of debtor and creditor between the parties, seem superfluous, in view of the learned and exhaustive decision of this Court to the same effect, in Matthews vs. Creditors, 10 A. 342, the correctness of which has never, to our knowledge, been questioned.
It is not possible to suppose that Chief Justices Eustis, Slidell and Merrick, with all their learned associates, were oblivious of this principle or of the elementary distinction between the kinds of loan known as depositum, commodatum and mutuum. On the contrary, their decisions show that, while admitting the irregular deposit to be neither depositum, nor commodatum, but distinctly mutuum, and, therefore, giving rise to the ordinary relation of debtor and creditor, they yet deliberately held that, from the nature of the contracts, and under the provisions of our Code, as construed by them in connection with the fundamental principles of the Roman Civil Law, such irregular deposits were not subject to compensation. Their view is sustained by the construction placed on Articles of the Code Napoleon, identical with ours, by such jurists as Toullier, Marcadé, Mourlon, and others, who hold that the words, “ restitution of a deposit,” as used in Art. 2210 of our Code (Nap. C. 1293) although not scientifically applicable thereto, were, nevertheless, intended to include irregular deposits.
The arguments of these jurists, which it is not necessary to state here, convince our judgment, and we approye their conclusion. Even *608 were we in doubt, such has been the settled construction of our Code for 35 years, and no legislative change thereof has ever been made.
II.

As to the claim of the Louisiana National Ba-nlc.

It will not be disputed that a written order by a creditor, addressed to his debtor, directing him to pay to a third person a debt due to the former, accompanied by due notice to the debtor, would comply with all the requirements imposed by our Civil Code, Arts. 2642 to 2654, for the .valid giving of title, delivery, and complete assignment of the' credit or incorporeal right referred to in the order.
On general principles, the check, its presentation, x>rotest, and the written notice herein given, unequivocally fulfil all these requirements.
The question presents itself: on what x>rincix>le shall we refuse to give to such a transaction the effect which is given to it under the textual provisions of our Code ?
In the slightly considered case of Case vs. Henderson, 23 A. 49, it was held that the check-holder did not acquire a right of action against the bank, upon the authority of the Supreme Court of the United States, in Bank vs. Millard, 10 Wallace, 152. That was a case at law, in error to the Sux>reme Court of the District of Columbia, where the common law x>revails, and the able and x>erfectly accurate opinion of the Court is based upon the common law principles: 1st, that there was no privity of contract between the bank and the check-: holder, at the time the check was given, and 2d, that no such privity was created by the mere presentation of the check, without acceptance of the bank, because the depositor’s right was a mere chose in, action, not assignable without the consent of the debtor.
Olioses in action correspond substantially to, or, at least, are included within the civil law definition of incorporeal rights.
Our law, differing therein from the common law, distinctly recognizes the assignability of that class of incorporeal lights known at common law as dioses in aetion, and xn’ovides for the perfectibility of such assignments by notice to the debtor and entirely independent of his consent, and, from the moment of such notice, creates a privity between the debtor and the assignee, amounting to a x>erfect legal tie.
It follows that the reasons underlying the common law decisions quoted, have no apx>lication or existence under our law, and the decisions, therefore, have no ax>plication as authority here.
In a very recent case, decided by Mr. Justice Miller on Circuit, it was held that a check, duly notified to the bank, constitutes an assignment of the fund drawn against, which a court of equity will enforce in favor *609 of the check-holder, although a court of law will not. Bank vs. Coates, 12 Reporter, 514.
Even had the check, in the instant case been drawn in a common law State upon a bank in such State, so that the rights of the check-, holder would have been regulated by the lex loci contractus, yet if the action thereon had, by any means, been brought in our forum, our courts would have looked to, and would have enforced, the equitable right of the check-holder, and would have maintained the assignment. Jackson vs. Tiernan, 15 La. 485.
Here the cheek and notice operate, not merely an equitable but, equally, a perfect legal assignment.
The same case just quoted equally disposes of the objection that the debtor cannot be required to permit his debt to be cut up into fractions and thus to have several creditors substituted for one.
We are not required here to consider the correctness of the decision in Poydras vs. Delamere, 13 La. 98, cited in support of the last object tion, because it does not apply to the case of bank and depositor, the nature of whose contract is, that the bank shall pay out the depositor’s funds, in sums, and to persons designated in the depositor’s checks; and this implies the assent of the bank to the divisibility of its obligation.
In the interests of sound jurisprudence we are compelled to overrule Case vs. Henderson, and to hold, with the District Court, that the Louisiana National Bank acquired a perfect title to the fund in controversy.
This disposes of the claim of the attaching creditor.
Questions of illegal preference in favor of the bank cannot be agitated in this controversy, but must be raised in a different proceeding.
Judgment affirmed, at appellant’s cost.