THE NATIONAL EXCHANGE BANK OF BOSTON

*vs.*

SILAS W. McLOON, and HENRY SPALDING and J. FRED MERRILL, trustees; DYER AND GURNEY, claimants.

Knox. Opinion May 29, 1882.

</div>

*Assignment of part of a chose in action. Equity. Trustee process.*

The assignment of a part only of an entire demand or chose in action, is valid in equity, so as to be upheld in a court of equity, against the consent of the person owing the demand assigned, in all cases where just and equitable results may be accomplished thereby.

The court has jurisdiction to enforce an equitable assignment of a part of a demand or chose in action, as against a creditor who, after such assignment, attaches upon trustee process the whole of the demand or fund, the assignee having become, under the statutory provision therefor, a party to the trustee suit. All parties interested are in this case before the court. .

Silas W. McLoon made, substantially, the following assignment: "Whereas William McLoon was the owner of the ship Louisa Hatch, captured by the confederate steamer Alabama, and died, in April, 1871, leaving me one of seven heirs to his estate : Now, therefore, I, for a valuable consideration, do hereby assign, transfer and convey to Dyer and Gurney, all my claim and demand, of every name and nature, for damages, compensation and remuneration for the destruction of said ship, due from or to be paid by the United States, or the administrators of my father's estate, or any and all other persons, and all sums of money due or to be paid therefor; meaning hereby to assign and convey to said Dyer and Gurney all the right, claim and demand to which I am or may be entitled as heir at law of said William McLoon, and arising from and growing out of the destruction and loss of said ship." The ship destroyed belonged, in fact, to the father and a brother of the assignor. After the loss the brother died, leaving the father his sole heir; then the father died, leaving the assignor one of his heirs; next came the assignment; then the administrators of the father, who were also administrators of the deceased son, collected from the United States an award for the value of the ship, her freight and fittings. It turns out that the administrators are indebted to the assignor, not for a share of the award specifically and separately, but for his share of all his father's personal estate in their hands.

*Held*, that this instrument creates a valid equitable assignment of the assignor's interest in all the fund which comes to his father's estate from the total losses sustained by the father and deceased son by the destruction of the ship.

*Held*, also, that all the expenses of obtaining the award and its collection are a charge upon the fund, to be deducted therefrom; but that the assignor's share of all other charges and expenses, and all sums of money advanced to him by the administrators, are a charge upon his interest in the other assets of the estate in preference to imposing them upon the interest assigned.

ON REPORT.

Assumpsit for money paid and expended. The writ was dated May 10, 1876, and served on the alleged trustees on the same day.

The question presented to the court related to the disposition of the funds in the hands of the trustees. The facts shown by the disclosure are sufficiently stated in the opinion.

The assignees of a portion of the funds in the hands of the trustees appeared and claimed the funds. They were admitted as parties to the suit and filed allegations setting up the following assignment:

"Whereas, William McLoon of Rockland, in the State of Maine, was the owner of the ship Louisa Hatch, which was captured by the Confederate Steamer, Alabama, during the late war between the United States and the Southern Confederacy, so called.

"And whereas, said William McLoon died in April, 1871, leaving Silas W. McLoon, his son, and one of seven heirs to his estate.

"Now, therefore, I, said Silas W. McLoon of Rockland, in the county of Knox and State of Maine, in consideration, five thousand and five hundred dollars to me paid by Edwin Dyer and James Gurney of Boston, in the commonwealth, co-partners under the name of Dyer and Gurney, the receipt of which is hereby acknowledged, do hereby assign, transfer, and convey to said Dyer and Gurney, and their heirs and assigns, all my claim and demand of every name and nature, for damages, compensation and remuneration, for the destruction of said ship Louisa Hatch, due from, or to be paid by the United States, or the administrators of my father's estate, or any and all other persons, and all sums of money due, or to be paid therefor; meaning hereby to assign and convey to said Dyer and Gurney, all the right, claim and demand to which I am, or may be entitled to, as heir at law of said William McLoon, and arising from, and growing out of the destruction and loss of said ship.

"And I hereby authorize said Dyer and Gurney, and their heirs and assigns, to use my name in such manner as they may find necessary to prosecute, collect and receive said claim, and to compound and receipt for the same.

"The same to be held and enjoyed by said Dyer and Gurney and their executors, heirs, administrators and assigns, to the same extent I could have done, had this instrument not been made.

"Witness my hand and seal this seventh day of May, A. D. 1875."

Signed, sealed, witnessed and acknowledged before a justice of the peace.

The following were the terms of the report:

"This case is taken from the jury and reported to the law court, and that court is to determine the validity of the claim made by the claimants, and also whether the trustees are chargeable. If the claim of the claimants is sustained, the case is to stand on the docket at *nisi prius* to enable the trustees to determine the amount for which they are chargeable. All evidence is subject to any legal objection as if properly made when offered."

*A. P. Gould,* for the plaintiff.

The assignment, Silas W. McLoon to Dyer and Gurney was void in law for many reasons.

It conveys "all my claim for damages and compensation for the destruction of the ship Louisa Hatch, to be paid by the United States government, or the administrators of my father's estate." He had no such claim. He had no interest in the ship; and at the time of the assignment he had no claim against the administrators, except for his distributive share of his father's estate.

A declaration of the meaning or intention of a grantee, does not enlarge the grant, only to explain it, and if the terms are not sufficient without the explanatory clause, nothing passes. Hence the expressed intention "to assign all the right, claim and demand to which he is entitled as heir of William McLoon arising out of the destruction of the ship," conveyed nothing.

The most favorable view which can be taken for the assignees, is, that the defendant undertook to assign one-seventh part of the money which the administrators might receive on the Alabama claim for his father's eighth part of the ship.

It amounts to this, one of seven heirs undertakes to assign his interest in a chose in action which belonged to his father's estate, an estate of over four hundred thousand dollars, with many choses in action due to it, some of which were unsettled at the time of the assignment.

It would be vain to look for authority to sustain such an assignment.

Even an assignment of an aliquot part of his distributive share of his father's estate, would have been void in law without the assent of the administrators and a promise on their part; and for-

a much stronger reason an assignment of what he supposed would be his share of a single chose in action, then due to his father's estate, would be void. *Getchell* v. *Maney*, 69 Maine, 442; *Gibson* v. *Cooke*, 20 Pick. 15; *Robbins* v. *Bacon*, 3 Maine, 346; *Manderville* v. *Welch*, 5 Wheat. 277; 2 Kent's Com. (7th ed.) 688, note *e*; *Tierman* v. *Jackson*, 5 Peters, 480; Drake, Att. § 611, and cases cited.

The case of *Gibson* v. *Cooke, supra,* goes on all fours with the case at bar; and, approved as it is by our court, is decisive.

In that case, the trustee under the will of the plaintiff's mother stood in precisely the same relation to the assignor as the trustees in this case stood to the defendant at the time of the attempted assignment. The reason for rejecting the assignment in that case applies much more strongly to this one, because if the assignment is valid, the administrators would be compelled, not only to open an account and settle with the several persons, but also with individual claims due to the estate, which would much increase the hardship on them.

If an heir at law can assign to one person his interest in one particular claim due to his ancestor's estate, he can assign his interest in each and every claim due to the estate to as many different persons. This would compel the administrators to keep complicated accounts and answer to the suits of many different persons.

The assignment was void because not executed according to the laws of the United States. R. S., U. S. § 3477; *Trist* v. *Child*, 21 Wall. 441; *United States* v. *Gillis*, 95 U. S. (5 Otto,) 407; *Becker* v. *Sweetzer*, 15 Minn. 427; *Creighton* v. *Black*, 2 Mon. Ter. 354.

The question here is as to the effect of the assignment upon the legal liability of the administrators, not how the assignor would be affected. And the following cases are not in point: *Wood* v. *Wallace*, 24 Ind. 226; *Patten* v. *Wilson*, 34 Pa. St. 299; *Lowery* v. *Steward*, 25 N. Y. 239; *Parker* v. *Syracuse*, 31 N. Y. 376; *Algar* v. *Scott*, 54 N. Y. 14; *Simpson* v. *Bibber*, 59 Maine, 196.

It is claimed that the assignment is good in equity. There is no distinction between actions at law and suits in equity, in the

protection which courts afford to assignments. Courts of law in this State "in all cases uphold and protect the equitable interests of the assignee." *Pollard* v. *Ins. Co.* 42 Maine, 221.

Would a court of equity compel these administrators to open an account to as many persons as each heir chose to assign some portion of his share? *A fortiori*, would the court require them to subdivide every claim due to the estate? None of the authorities justify the assertion that a court of equity would compel the administrators to do all this. *Ex equo et bono*, it could not be required.

In no event can the assignment cover the claim for any part of the vessel which his father did not own. Seven-eighths of the net amount of the Alabama claim comes into the hands of these administrators as cash from the estate of the son and not in payment of a claim of this estate against the government.

*Orville D. Baker,* (*Joseph Baker* with him,) for the claimants, cited : *Brooks* v. *Cook,* 8 Mass. 246 ; *Waite* v. *Osborne,* 11 Maine, 185 ; *Kimball* v. *Woodman,* 19 Maine, 200 ; Dicey on Parties, rule 45, p. (221,) (319) ; 2 Chitty Pl. 16th Am. ed. 119, obs. See *Farwell* v. *Jacobs, Admr.* 4 Mass. 634 ; *Prescott* v. *Morse,* 64 Maine, 422 ; 2 Wm's Ex'rs, 6th ed. 1803 ; *Hutchinson* v. *Sturges,* Willes, 261, 3 ; *Wood* v. *Wallace,* 24 Ind. 226 ; *Patten* v. *Wilson,* 34 Pa. St. 299 ; *Lowery* v. *Steward,* 25 N. Y. 239 ; *Parker* v. *Syracuse,* 31 N. Y. 376 ; *Alger* v. *Scott,* 54 N. Y. 14 ; *Caldwell* v. *Hartupee,* 70 Pa. St. 74 ; *Simpson* v. *Bibber, and Tr.* 59 Maine, 196 ; 2 Story Eq. Jur. § 1044 ; *Row* v. *Dawson,* 1 Ves. 431 ; *Yeates* v. *Groves,* 1 Ves. Jr. 281 ; *Ex-parte Alderson,* 1 Madd. 39 : *Ex-parte South,* 3 Swanst. 392 ; *Lett* v. *Morris,* 4 Sim. 607 ; *Moody* v. *Kyle,* 34 Miss. 506 ; *Supt. Pub. Schools* v. *Heath,* 15 N. J. Eq. 22 ; *Pomeroy* v. *Life Ins. Co.* 40 Ill. 398 ; *Caldwell* v. *Hartupee,* 70 Pa. St. 74 ; *Pollard* v. *Ins. Co.* 42 Maine, 225 ; *Jordan* v. *Parker,* 56 Maine, 557-8 ; *Buffington* v *Gerrish,* 15 Mass. 156.

PETERS, J. It appears, from the facts in this case, that William McLoon and his son, Charles William McLoon, were the owners of a ship destroyed by the confederate cruiser Alabama, the former owning an eighth and the latter seven-

eighths thereof; that soon after the loss of the ship the son died intestate, the father being his sole heir; that soon after the son's decease the father died intestate; that his administrators, who were also administrators upon the estate of the son, petitioned the court of commissioners upon the Alabama claims, to recover the value of the vessel, her freight and fittings, setting forth all the claims for the father and son in a single petition, and recovering accordingly; that during the pendency of the petition, Silas W. McLoon, another son of William, and as such entitled to one-seventh of his estate, assigned his share of the funds, to be received by his father's administrators for the loss of the ship, to certain of his creditors; that, after the administrators received the funds, other creditors of Silas sued him and trusteed the administrators; that it turns out that the administrators are indebted to Silas, not for his share of those funds alone and separate from the other funds of the estate, but for a seventh of the entire funds of the estate in their possession, which exceed the amount recovered for such loss; and that there is a conflict of claim for the assigned fund between the attaching creditors and assignees.

The questions are these: *First:* Is the assignment of a part only of an entire demand or chose in action, valid in equity, so as to be upheld in a court of equity, against the consent of the person owing the demand assigned? *Second:* If so, is the fund in a situation, under the proceedings now before us, to authorize us to decide upon its equitable distribution? *Third:* To what extent is the fund to be subjected to an equitable distribution, if at all, upon the facts adduced?

The first is an important question not before decided in this State. It is universally admitted, at the present day, that *the whole* of a chose in action may be assigned, and the assignment be binding upon the debtor. That is but an equitable assignment, unknown to the ancient common law, but such as the later common law takes notice of and protects, allowing the assignee to use the legal remedies in the name of the assignor. But courts of law, not, as such, exercising equitable jurisdiction, do not protect or recognize an assignment of a part only of an entire demand. At

law, a partial assignment may be good between the parties, and, if the assignor collects the money, he would in such case hold it as the trustee of the assignee. But the assignee has no legal remedy against the debtor who does not become a party to the arrangement. The reason for the legal doctrine is obvious. The law permits the transfer of an entire cause of action from one person to another, because in such case the only inconvenience is the substitution of one creditor for another. But if assigned in fragments, the debtor has to deal with a plurality of creditors. If his liability can be legally divided at all without his consent, it can be divided and sub-divided indefinitely. He would have the risk of ascertaining the relative shares and rights of the substituted creditors. He would have, instead of a single contract, a number of contracts to perform. A partial assignment would impose upon him burdens which his contract does not compel him to bear. In support of this doctrine, as one of law, the following cases have been commonly cited and relied upon.: *Mandeville* v. *Welch*, 5 Wheat. 277 ; *Tierman* v. *Jackson*, 5 Pet. 580 ; *Gibson* v. *Cooke*, 20 Pick. 15 ; *Robbins* v. *Bacon*, 3 Maine, 346.

In a court of equity, however, the objections to a partial assignment of a demand which are formidable in a court of law, disappear. In equity, the interests of all parties can be determined in a single suit. The debtor can bring the entire fund into court, and run no risks as to its proper distribution. If he be in no fault, no costs need be imposed upon him, or they may be awarded in his favor. If he be put to extra trouble in keeping separate accounts, he can, if it is reasonable, be compensated for it. In many ways a court of equity can, while a court of law, with its present modes, cannot, protect the rights and interests of all parties concerned.

The debtor is not the only party whose interests should be considered. There is as much natural equity, in many cases, in protecting an assignment of a part of a claim as an assignment of the whole of it. Equitable assignments are the outgrowth of the requirements and refinements of the present business era. In many ways, directly and indirectly, do circumstances create assignments of parts of funds, in dealings through servants,

tenants, consignees, bankers and other agencies. Disastrous results will often be experienced by deserving and innocent persons, if this boon be not granted by courts of equity. The case at bar illustrates it. The parties in this case supposed the assignment covered all the funds the assignor had, while it turns out that the administrators had a slightly larger amount to be distributed. This is a race, too, between creditors. The statute allows the funds to be intercepted by creditors in different suits, and the administrators might be required to make as many payments as there are suits. Should it be, that a debtor cannot assign to a creditor what the same creditor may attach? We must bear in mind that both the common law and equity have been constantly progressive in the consideration of commercial questions. And the spirit of progress has also actuated legislatures in the same direction. Most of the states in the union have passed laws allowing an assignee of a chose in action to prosecute the claim in his own name; and the privilege is now most liberally accorded to an assignee by an English enactment, notwithstanding Lord Coke's belief, that "*any* right of assignment would be of great oppression of the people, and the subversion of the due and equal execution of justice." See act of 1873, (36 and 37 Vict.) c. 66, sec. 25, sub-sec. 6. We think, upon reason and principle, partial assignments should be sustained in a court of chancery, in all cases where it can be done without detriment to the debtor or stakeholder, whenever equitable and just results may be accomplished by it.

The doctrine is vindicated, directly and indirectly, by a great deal of authority. It was recognized at an early day in the English chancery cases. *Row* v. *Dawson*, 1 Ves. Sen. 431; *Yeates* v. *Groves*, 1 Ves. Jr. 481; *Ex parte South*, 3 Swanst. 392; *Fitzgerald* v. *Stewart*, 2 Sim. 333; S. C. 2 Russ. and My. 457; *Lett* v. *Morris*, 4 Sim. 607; *Watson* v. *The Duke of Wellington*, 1¾Russ. and Mylne, 602.

In *Burn* v. *Carvalho*, 4 Mylne and Cr. 690, Lord Cottenham lays down this statement of the principle : "In equity, an order given by a debtor to his creditor upon a third person having funds of the debtor, to pay the creditor out of such funds, is a

binding equitable assignment of so much of the funds." And previous cases are reviewed in the opinion in that case, in the following manner: "In *Row* v. *Dawson*, Lord HARDWICKE says, 'It is a credit on the fund, and must amount to an assignment of so much of the debt; and, though the law does not admit an assignment of a *chose in action*, this court does, and any words will do, no particular words being necessary thereto; and in *Yeates* v. *Groves*, Lord THURLOW says: 'This is nothing but a direction by a man to pay part of his money to another for a valuable consideration. If he could transfer, he has done it; and it being his own money, he could transfer.' In *Ex parte South*, Lord ELDON says: 'It has been decided in bankruptcy that if a creditor gives an order on his debtor to pay a sum in discharge of his debt, and that order is shown to the debtor, it binds him. On the other hand, this doctrine has been brought into doubt by some decisions in the courts of law, which require that the party receiving the order should, in some way, enter into a contract. That has been the course of their decisions, but is certainly not the doctrine of this court.' In *Fitzgerald* v. *Stewart*, and *Lett* v. *Morris*, the same rule was acted upon; and, in *Watson* v. *The Duke of Wellington*, Sir J. LEACH thus defines an equitable assignment: 'In order to constitute an equitable assignment, there must be an engagement to pay out of a particular fund.' . . . Here there is an existing fund in an agent's hand, and there is a distinct contract to discharge the liability out of that fund."

Lord TRURO in *Rodick* v. *Gandell*, 1 De Gex. Mac. and Gor. 763; S. C. 12 Beav. 325, reviewed the cases extensively, and expresses a similar opinion as to the principle to be deduced from them. The same rule has been repeatedly acted upon in the later English chancery decisions. *Addison* v. *Cox*, L. R. 8. Ch. 76, reviews and approves the doctrine of the earlier cases. That was a case where an officer assigned a part of a sum due to him from the sale of his commission, and the sale was held to be valid. *Brice* v. *Bannister*, L. R. 3 Q. B. Div. 569 is a pertinent case. The facts were these: A agreed to build a vessel for B, the price of which was to be paid by installments.

Before the vessel was finished, the builder, being in debt to C, by an instrument in writing directed B to pay to C one hundred pounds out of monies due or to become due from B to the builder. B had notice but refused to be bound by it. The written transfer was held to be an equitable assignment of that part of the money then due to the assignor, and it was decided that the assignee could sustain an action therefor against B, under a provision of the act creating the Supreme Court of Judicature which allows an assignee to have in his own name either legal or equitable remedies. Other cases are decided upon the same principle. *Ranken* v. *Alfaro*, L. R. 5 Ch. D. 786; *Ex parte Hall*, L. R. 10 Ch. D. 615; *Hopkinson* v. *Forster*, L. R. 19 Eq. 74; *Thompson* v. *Simpson*, L. R. 5 Ch. 659; *Brown* v. *Bateman*, L. R. 2 C. P. 272; *Field* v. *Megaw*, L. R. 4 C. P. 660.

In some cases in Massachusetts the doctrine appears not to have been yielded to, but the discussions have arisen in cases at law and not in equity. *Palmer* v. *Merrill*, 6 Cush. 282; *Tripp* v. *Brownell*, 12 Cush. 376; *Bullard* v. *Randall*, 1 Gray, 605; *Dana* v. *Third Nat. Bank*, 13 Allen, 445.

In New York the doctrine is well established by a series of cases covering a long period of time. *Morton* v. *Naylor*, 1 Hill, 583, and cases cited in note. *Bradley* v. *Root*, 5 Paige, 632.; *Phillips* v. *Stagg*, 2 Edw. Ch. 108; *Marshall* v. *Meech*, 51 N. Y. 140; *Alger* v. *Scott*, 54 N. Y. 14; *Brown* v. *Mayor of New York*, 18 Supreme Court · R. 22; *Jones* v. *Mayor*, 47, N. Y. Superior Court R. 242. In *Field* v. *The Mayor of New York*, 2 Seld. 179, the precise question was presented and fully discussed and decided in accordance with preceding cases in that state. In *Risley* v. *Phœnix Bank*, 83 N. Y. 318, the rule was again applied and the doctrine affirmed, where the question was disposed of in these words: "The claim that there can be no valid assignment of a part of an entire debt or obligation is opposed to the well settled rule in this state. This point was ruled the same way by the court of King's Bench, in *Tibbetts* v. *George*, 5 Ad. and Ell. 107. The tendency of modern decisions is in the direction of more fully protecting the equitable right of assignees of

choses in action, and the objection that to allow an assignment of a part of an entire demand might subject the creditor to several actions to enforce a single obligation has much less force under a system which requires all parties in interest to be joined as parties to the action." See S. C. 18 Supreme Court R. 484.

The same result is reached by the Pennsylvania court. In their latest case touching the question, *Appeals of the City of Philadelphia*, 86 Penn. St. 179, it was held that the principle, for reasons of public policy, should not apply to claims against a municipality, the court remarking, that "there is no doubt, that as between individuals the rule prevails in equity." In *Daniels* v. *Meinhard*, 53 Georgia, 359, it was held that a holder of a fire insurance policy, after a loss, might assign in writing an interest in the same to a creditor to the extent of the creditor's debt, which would prevent an attachment of it as the property of the assignor by trustee process. In *Stanberry* v. *Smythe*, 13 Ohio St. (N. S.) 495, the court refused to recognize the principle in an action at law, expressly admitting that it would obtain in equity, "where the rights of all the parties could be determined in one and the same controversy." In *Etheridge* v. *Vernoy*, 74, 809, N. C. which was "a civil action in the nature of a bill in equity," the rule was applied. Similar decisions have been made in other courts. *Dowell* v. *Cardwell*, 4 Saw. 217; *Lapping* v. *Duffy*, 47 Ind. 51; *Whitney* v. *Cowan*, 55 Miss. 626. The above are marked cases illustrating the rule. New Hampshire cases cast some light upon the question. *Conway* v. *Cutting*, 51 N. H. 407; *Christie* v. *Sawyer*, 44 N. H. 298. The doctrine is adopted in New Jersey, acted upon in Vermont, and evidently approved by the supreme court of the United States, as a rule in chancery. *Public Schools* v. *Heath*, 15 N. J. Eq. 22; *Claffin* v. *Kimball*. 52 Vt. 7; *Christmas* v. *Russell*, 14 Wall. 69; *Trist* v. *Child*, 21 Wall. 441.

There is a concurrence of opinion also among text writers, so far as the question is noticed by them. 2 Story Eq. Jur. § 1044; 2 Spence's Eq. Jur. *859; Byles on Bills, (6th Am. ed.) 171; 1 Pars. on Notes and Bills, 334. The American editors of Leading Cases in Equity, (1st ed. vol. 2, pt. 2, p. 234,) say:

"But whatever may be the intrinsic propriety or convenience of the doctrine, it seems too well established by authority to be shaken, that the partial assignment of a debt is binding in equity and will invalidate subsequent payments to the assignor, to the extent thus assigned." In subsequent editions, however, the doctrine is not so conclusively stated. The Roman law contained the same principle. It allowed a single debt to be assigned in parts, but required all the assignees to join in one suit and receive the whole debt at one time. WARE, J., in the case of *Hull of a New Ship.* 2 Ware, R. 203.

The counsel for the attaching creditors relies upon the cases of *Mandeville* v. *Welch*, and *Tierman* v. *Jackson, supra,* as asserting that there can be no equitable assignment of a part of a demand which even a court of equity will protect. We understand the opinions in those cases to declare no more than that a court of law cannot protect such equitable assignments. Those were actions at law. In the former, STORY, J., says: "The second question is whether, under all the circumstances of the case, Prior was an assignee in equity *entitled to maintain the present action.*" In the latter case the same judge said the question was whether the assignee could maintain that action, adding these words, "whatever might be the case in a suit in equity, brought to enforce his equitable claims under his assignment." We think the counsel falls into the same error in attributing the same meaning to the words of the opinion in *Getchell* v. *Maney,* 69 Maine, 442. The most that was intended to be said there was, that, without the assent of the debtor, a creditor cannot assign part of a debt or chose in action, so as to give an equitable interest or lien, *which a court of law can recognize and protect.* The learned judge who delivered the opinion of the court in that case did not undertake to say, nor had he any occasion to say, what would be the rule in such a case in a court of equity. As before seen, a court of law protects the assignment of an entire demand, although that is an equitable and not a legal assignment. Further than that the law does not deal with equitable assignments. It matters not whether the partial assignment be by parol or by a formal instrument or by an order or draft upon a

particular fund. Neither law or equity observes any difference in the kinds or modes of assignment. Neither is a legal, while either may be an equitable, assignment. Where a draft or order constitutes an assignment, it must be upon a particular fund. It is not enough that it is drawn upon a debtor by a creditor in general terms.

The next question is, can we, in this proceeding, determine the equitable rights of the parties? We think we can and that we should do so. The statutory provisions relating to trustee process and procedure necessitate our taking jurisdiction of the matter, so far as to decide whether the assignment be valid or not. It would be an useless circuity to require a bill in equity to be instituted merely to settle that controversy. All persons interested are parties to this litigation, which is carried on in most respects as if it were a bill of interpleader. We cannot, by this proceeding, enforce payment to the assignees, but can prevent payment to the attaching creditors. In quite a number of the cases already cited by us, the same question arose and was settled upon similar proceedings.

Lastly : how shall the assets be distributed? It is contended that the instrument by Silas conveys only one-seventh of his father's direct ownership in the Alabama claim. We think the intention was to transfer the assignor's interest in all the fund coming to his father's estate from all descriptions of loss caused by the destruction of the vessel, and from whatever sources obtained, and that the words of the instrument are sufficient to accomplish the purpose intended. The actual intention is clear enough. Equity adheres to the intention.

It appears that Silas owes the estate for advances. Equity requires that his interest in the unassigned assets shall be first exhausted to pay such advances. The attaching creditors can stand in no more favorable situation than their debtor did at the date of their attachments. By assigning one part of the assets he agrees that charges common to all the assets shall be paid by the part not assigned. Equity directs that the assets in which the assignees have no interest, shall bear the incumbrance in preference to imposing any share upon the interest conveyed.

*Holden* v. *Pike*, 24 Maine, 427; *Shepherd* v. *Adams*, 32 Maine, 63.

The fees of the administrators come under this head; they are not a lien on any particular portion of the estate. Any special expenses attending the recovery of the Alabama claim, entirely incident thereto, should be deducted from that fund. Had anything been allowed to the administrators as commissions upon the estate of Charles W. McLoon, that should have been deducted. That charge, however, is included in a four per cent. commission charged against the father's estate. It may be equitable to consider that charge as arising in the settlement of the son's estate.

We think no other points taken in behalf of the attaching creditors need an especial examination.

An application of these rules to the facts of the case, gives the following result. The Alabama award was ninety-two thousand and fifty-four dollars and eleven cents. After deducting the expenses of prosecuting the claim (four thousand three hundred and forty-two dollars and eighty cents), and also a commission upon the portion of the award coming through the son's estate (three thousand two hundred and twenty-one dollars and eighty-nine cents), and then deducting the widow's share (twenty-eight thousand one hundred and sixty-three dollars and fourteen cents), leaves a remainder (fifty-six thousand three hundred and twenty-six dollars and twenty-eight cents), one-seventh of which (eight thousand and forty-six dollars and sixty-one cents), is the amount of the award really and effectually assigned. The amount which the assignor owes the estate (one thousand five hundred and forty-eight dollars and two cents) is to be paid out of his interest or ownership in any other assets of the estate, so far as such interest goes. Any balance necessary to meet the amount, must be taken and made up from the sum assigned (eight thousand and forty-six dollars and sixty-one cents). The remainder left from the latter sum, so far as required to pay the notes (five thousand five hundred dollars) and interest thereon, must be paid to Dyer and Gurney, the assignees. Any excess left after such payments, if there be such, may be held upon the trustee writs in the order of

attachment, as the assignment is only for security. *Macomber v. Doane*, 2 Allen, 541; *Simpson v. Bibber*, 59 Maine, 196. If any interest is to be accounted for, that may be added to the sum assigned. And the case, by the terms of the report, is remitted to the court at *nisi prius*, to regulate the rights of the parties upon the rules prescribed in this opinion.

APPLETON, C. J., WALTON, BARROWS, DANFORTH and LIBBEY, JJ., concurred.