## PHŒNIX MUT. LIFE INS. CO. OF HARTFORD, CONN., v. ENGLAND et al.

### No. 9795.

District Court, W. D. Missouri, W. D.
Feb. 16, 1938.

Kenneth E. Midgley and Michaels, Blackmar, Newkirk, Eager & Swanson, all of Kansas City, Mo., for plaintiff.

John A. McGuire and Charno & Drummond, all of Kansas City, Mo., for defendant.

COLLETT, District Judge.

It appears from the pleadings that:

Two life insurance policies with monthly indemnity benefit provisions were issued to Robert J. England in 1917; in June, 1923, England was declared insane by court order; by the terms of the policies the monthly benefits became payable by reason of the insanity of the insured; Mary E. England, a resident of this judicial district, was duly appointed guardian and curatrix of his person and estate; much more than the jurisdictional amount has become due on the policies; Mary E. England in writing assigned all claims, demands, and choses in action which she, as guardian, had against the insurer arising out of the policies of insurance, to Harry Bernblum, a resident of the state of Connecticut, for the sole purpose, as stated in the assignment, of collecting the claims and holding the amount collected in trust for the use of Mary E. England, as guardian.

The insurer, Phoenix Mutual Life Insurance Company of Hartford, Conn., is a corporation domiciled in the state of Connecticut.

The actual reason for the assignment to Bernblum was stated by counsel with refreshing and commendable frankness to be the prevention of the removal of an action on the insurance policies to the federal courts.

Bernblum brought an action in the state court on the policies, duly alleging his interest as assignee. The insurance company thereupon brought this action in this court against Mary E. England, as guardian, seeking a declaratory judgment fixing the rights and obligations of the parties under the insurance policies. Mary E. England thereupon filed a motion to dismiss this action upon the ground that not she, but Bernblum, was the real party in interest and the necessary party to this action, and that since Bernblum is a resident of the state plaintiff is a resident of, and neither of them is a resident of Missouri, there is no diversity of citizenship, and this court is without jurisdiction.

It is conceded by defendant Mary E. England that the assignment was made to Bernblum for the sole purpose of placing the legal title to the claim in Bernblum in order to defeat plaintiff's right to removal of the case from the state court or the bringing of the action by plaintiff in this court. It is also frankly admitted that Bernblum has no personal interest whatever in the claim. He was selected as assignee because of his residence in the state of plaintiff's domicile for the purpose, as heretofore stated, of controlling the forum of the anticipated litigation.

The question presented, simply stated, is: Can the defendant defeat plaintiff's right to a trial in this court by transferring the naked legal title to the chose in action to a "straw man" for the sole purpose of defeating jurisdiction? It is asserted that the answer must be in the affirmative. Bernblum v. Travelers' Ins. Co., D.C., 9 F.Supp. 34, (the same Bernblum involved in the present action) Provident Sav. Life Assurance Society v. Ford, 114 U.S. 635, 5 S.Ct. 1104, 1107, 29 L.Ed. 261; Oakley v. Goodnow, 118 U.S. 43, 6 S.Ct. 944, 30 L.Ed. 61; Leather Mfrs. Nat. Bank v. Cooper, 120 U.S. 778, 7 S.Ct. 777, 30 L.Ed. 816, are cited by defendant in support of her position.

It is difficult to reconcile these cases with Ex parte Nebraska, 209 U.S. 436, 28 S.Ct. 581, 584, 52 L.Ed. 876. The distinction may arise from the fact that in the former cases the legal title was treated as resting in the assignee, although the assignment was treated as being "colorable" with the problem of determining its validity left to another tribunal. Indicative thereof is the following language in Provident Savings Life Assurance Society v. Ford, supra:

"The plain answer to this position is that the action was nevertheless Ford's, and as against him there was no right of removal. * * *

"And by analogy to this law, it may, perhaps, be a good defense to an action in a state court to show that a colorable assignment has been made to deprive the United States court of jurisdiction; but, as before said, it would be a defense to the action, and not a ground of removing that cause into the federal court."

In Ex parte Nebraska, supra, however, the court did not accept the appearance of the state of Nebraska as a party plaintiff, and its bare allegation of interest in the action as either conclusive or binding, but looked into the record to discover that the state had no real interest in the controversy and upheld the jurisdiction of the federal

court when that jurisdiction would have been denied had it appeared that the state had an interest.

Hence it seems that in the former cases the allegation of interest was allowed to control without further inquiry, while in Ex parte Nebraska, supra, the court said:

"We must add that the mere presence on the record of the state as a party plaintiff will not defeat the jurisdiction of the Federal court when it appears that the state has no real interest in the controversy. And in the present case the circuit court was not bound to adjudicate the question merely by an inspection of the nominal parties to the record, for the mere presence of the state of Nebraska as a party plaintiff was not of itself sufficient necessarily to defeat the jurisdiction of the Federal court. It became, and was, the duty of the circuit court to determine the question whether the state of Nebraska was an actual party plaintiff in the present suit, and to determine that question by consideration of the nature of the case as presented by the whole record, and not 'by a reference to the nominal parties to the record.'

"This the circuit court did, and, from an inspection of the entire record, for the reasons stated in the opinion filed, the court held that, although the state of Nebraska was a nominal party plaintiff on the record, yet it had no real substantial legal interest in the controversy."

The conflict, if there be conflict, may be narrowed to the question—"Will the federal court look behind appearances to discover interest or lack of it"—thus eliminating any conflict between the authorities as to the duty of the court when a lack of interest was apparent, for it is to be presumed that had an actual lack of interest been obvious the result in Provident Savings Life Assurance Society v. Ford, supra, would have been different.

▪ Applying the above authorities, as construed, what is the present situation in the case at bar? Here, in addition to the formal allegations appearing in the pleadings, the parties openly and frankly admit Bernblum's total lack of any real interest, and concede that which my esteemed associate accurately surmised in Bernblum v. Travelers' Ins. Co., supra, to wit, that the use of Bernblum's name was a sham and a pretext devised to accomplish by indirection that which could not be done directly. It seems obvious that if such a purpose had been attempted by stealth or deceit the act would be promptly branded as a fraud on the court, and (as suggested in Provident Savings Life Assurance Society v. Ford the State Court should do) ignored. The fact that defendants counsel are honest and frank about defendant's purposes and acts cannot convert a legal fraud into a lawful procedure. The true situation being obvious and apparent in the case at bar, there is no necessity for this court to determine whether the determination of the true state of facts will be left to the state court or inquired into here.

The facts showing that the assignment was a mere pretext and that its execution was fraudulent, as that term is used without approbrium, it must be ignored. To do otherwise would make federal procedure a game in which the statutory rights of parties might be blocked by an adroit and cleverly designed manuever of his adversary.

In view of the conclusion reached the other questions presented are of minor significance. The motion to dismiss is overruled.

An exception to this ruling is allowed defendant. Defendant is given ten days from this date in which to plead.