Arthur **GENTLE** and Warren Gentle d/b/a Gentle & Sons, et al., Plaintiffs,

v.

**LAMB–WESTON, INC.,** an Oregon corporation, Defendant.

Civ. No. 1761.

United States District Court
D. Maine, N. D.
July 7, 1969.

Roger A. Putnam, Howard H. Dana, Jr., Portland, Me., Lynwood E. Hand, Houlton, Me., for plaintiffs.

Daniel T. Drummond, Jr., Paul A. Wescott, Hugh G. E. MacMahon, Portland, Me., for defendant.

## OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

This matter is before the Court on plaintiffs' motion for remand to the Aroostook County, Maine Superior Court. The pertinent facts may be briefly stated. On September 30, 1968, nine plaintiffs, all Maine citizens and potato farmers residing in Aroostook County, commenced an action for breach of contract in the Aroostook County Superior Court against Snow Flake Canning Co., a Maine corporation engaged in the canning and processing of various foods. Several months prior thereto, unbeknownst to plaintiffs' counsel, Snow Flake had merged with Lamb-Weston, Inc., an Oregon corporation, the latter surviving. Upon being appraised of this, plaintiffs' counsel brought the present action in the same court on December 23, 1968 naming Lamb-Weston as defendant. The second action seeks the same relief and differs only in that there are three additional plaintiffs, one of whom is George O. Tamblyn, an Oregon citizen. Shortly before the filing of the second action, Tamblyn, who was a law school classmate of an attorney in the law firm representing plaintiffs, took an assignment of 1/100 of each plaintiff's claim.[1] It is undisputed that Tamblyn had no previous interest in the litigation and agreed to take the assignments at the request of, and as an accommodation to, his classmate.[2] The conceded purpose of the assignments was to defeat an anticipated removal to this Court by defendant under 28 U.S.C. § 1441(a) (1964) by destroying the complete diversity of citizenship required for federal jurisdiction under 28 U.S.C. § 1332(a) (1) (1964). *See* Hyde v. Ruble, 104 U.S. 407, 26 L.Ed. 823 (1882)[3]. Nevertheless, on January 13, 1969 de-

---

1. As a 1/100 assignee of these claims, Tamblyn stands to recover 1/100 of any net recovery in this case and will be liable, absent an adequate recovery, for the same proportion of any disbursements. In addition, he is to be compensated for any time expended by him at the rate of $20 per hour and is to be reimbursed for any out-of-pocket expenses he may incur. As consideration for the assignments, Tamblyn paid each assignor $1, or a total of $9.

2. As plaintiffs assert, it may be that Tamblyn was also motivated by the hope of making a quick and easy profit, since plaintiffs' claims are alleged to be worth a total of $300,000.

3. Plaintiffs' counsel have been unembarrassedly frank about their objective at every step. In their petition for remand, they "admit that the principal object of the bona fide assignment for a valuable consideration of 1/100th of all the causes of action herein sued upon to George O. Tamblyn was to prevent the invoking of federal diversity jurisdiction." With even greater candor, this admission is repeated in a letter from one of plaintiffs' attorneys to one of defendant's attorneys, quoted in part in plaintiffs' brief:

Again so that there can be no mistake, we have admitted both orally and in writing that George O. Tamblyn * * * who practices law and resides in Portland, Oregon, has been brought into this case solely for the purposes of destroying diversity jurisdiction.

fendant removed the action to this Court, and on February 3, 1969 plaintiffs filed the pending motion for remand, on the ground that this Court lacks subject matter jurisdiction "in that George O. Tamblyn, plaintiff and Lamb-Weston, Inc., defendant, are both citizens of the State of Oregon. * * * "

Through this cynical device, plaintiffs seek to benefit from whatever local prejudice a trial against a foreign corporation before an Aroostook County jury might afford them. The central issue[4] then is whether this Court is powerless to protect its jurisdiction and the constitutional (Art. III, § 2, cl. 1) and statutory (28 U.S.C. § 1332 (1964)) right of a defendant of diverse citizenship to have a federal forum free from the potentiality of local bias.[5] The Court concludes that it is not.

Congress has provided that a federal district court shall not have jurisdiction of an action in which a party has been "improperly or collusively made or joined" for the purpose of creating federal jurisdiction. 28 U.S.C. § 1359 (1964) [6]. There is no similar statutory provision, however, barring collusive action to defeat federal jurisdiction. While conceding that remedial legislation is called for, plaintiffs say it is for Congress, and not the courts, to correct this evil, and that controlling authority has sanctioned the type of arrangement present in this case.

In support of their position plaintiffs place principal reliance on Provident Savings Life Assurance Society v. Ford, 114 U.S. 635, 5 S.Ct. 1104, 29 L.Ed. 261 (1885) and Mecom v. Fitzsimmons Drilling Co., 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233 (1931). *Provident* was a case in which a judgment was assigned to plaintiff for the purpose of preventing removal from the state to the federal court. The Supreme Court affirmed the state court's refusal to grant removal, observing:

[I]t, may, perhaps, be a good defence to an action in a state court to show that a colorable assignment has been

---

4. Another question briefed and argued by the parties is whether a partial assignment, otherwise valid under Maine law (*see* National Exchange Bank of Boston v. McLoon, 73 Me. 498, 504–505 (1882); Shiro v. Drew, 174 F.Supp. 495, 497, n. 2 (D.Me.1959); *and see* 11 M.R.S.A. § 2–210(2) (1964)), is void under these circumstances as violative of the Maine champerty statute, 17 M.R.S.A. § 801 (1964) which provides:

 Whoever * * * gives * * * any valuable consideration * * * with intent thereby to procure any account, note or other demand for the profit arising from its collection by a civil action * * * shall be punished * * *.

 *See* Hinckley v. Giberson, 129 Me. 308, 151 A. 542 (1930). Although the question is not entirely free from doubt, the Court is satisfied that, despite the literal wording of the Maine statute, the assignments are not champertous since they do not promote additional litigation and since the assignee had no "improper intention." *See* Plummer v. Noble, 6 Me. 285, 288 (1830); National Exchange Bank of Boston v. McLoon, *supra*.

5. *See* Corwin, The Constitution and What it Means Today 153 (1963).

6. 28 U.S.C. § 1359 provides:

 A district court shall not have jurisdiction over a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.

 Any doubts which may have existed as to the effectiveness of a colorable assignment to create diversity have been laid to rest by the Supreme Court in the recently decided case, Kramer v. Caribbean Mills, Inc., 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (U.S. May 5, 1969). In Kramer the Court held that, in light of Section 1359, the federal district court lacked jurisdiction to entertain an action against a Haitian corporation by a Texas lawyer to whom the claim of a Panamanian corporation had been assigned solely to "manufacture" diversity jurisdiction. Similarly, it has recently been held that Section 1359 bars federal jurisdiction of cases in which a nonresident *administrator or guardian has* been selected for the sole purpose of creating diversity jurisdiction. *See* McSparran v. Weist, 402 F.2d 867 (3d Cir. 1968) (overruling prior holdings); *contra*, Lang v. Elm City Construction Co., 324 F.2d 235 (2d Cir. 1963).

made to deprive the United States court of jurisdiction; but, as before said, it would be a defence to the action, and not a ground of removing that cause into the federal court.

114 U.S. at 641, 5 S.Ct. at 1107. *Accord,* Oakley v. Goodnow, 118 U.S. 43, 6 S.Ct. 944, 30 L.Ed. 61 (1886); Leather Manufacturers' Bank v. Cooper, 120 U.S. 778, 7 S.Ct. 777, 30 L.Ed. 816 (1887); Carson v. Dunham, 121 U.S. 421, 7 S.Ct. 1030, 30 L.Ed. 992 (1887).

In *Mecom* an administrator was selected for the sole purpose of defeating diversity jurisdiction. The Supreme Court there held that the administrator's motion to remand to the state court should have been granted, stating:

> [I]t is clear that the motive or purpose that actuated any or all of these parties in procuring a lawful and valid appointment is immaterial upon the question of identity or diversity of citizenship. To go behind the decree of the probate court would be collaterally to attack it, not for lack of jurisdiction of the subject-matter or absence of jurisdictional facts, but to inquire into purposes and motives of the parties before that court when, confessedly, they practiced no fraud upon it. * * * It has been uniformly held that, where there is a *prima facie* joint liability, averment and proof that resident and nonresident tortfeasors are jointly sued for the purpose of preventing removal does not amount to an allegation that the joinder was fraudulent, and will not justify a removal from the state court (citations omitted). The facts disclosed in this record fall far short of proof of actual fraud such as was held sufficient to justify removal in * * * (citations omitted).

284 U.S. at 189–190, 52 S.Ct. at 87.

Plaintiffs assert that in light of the *Provident* line of cases and of *Mecom,* federal courts must unquestioningly honor the most colorable attempts to deprive them of their jurisdiction, at least until Congress provides otherwise. However, *Provident* and its progeny all involved assignments of entire claims, not partial assignments. As defendant aptly points out, "It is one thing to say that diversity may be destroyed by an assignment of the assignor's entire claim and quite another to say that diversity may be destroyed by the assignment of a mere one per cent of a claim." The Supreme Court has never spoken on the effectiveness of a partial assignment to destroy diversity. And a fractional assignment, where the assignor remains a party for the purpose of profiting from local prejudice, is manifestly less defensible. Nor is *Mecom* compelling authority for plaintiffs' position. That case involved, not a colorable assignment, but the appointment of an administrator for the purpose of defeating removal. The Court was quite obviously reluctant to permit a collateral attack on the lawful and valid decree of the state court which appointed the administrator. *See* Wright, *Federal Courts* 88 (1963). In Kramer v. Caribbean Mills, Inc., *supra,* the Supreme Court itself has recognized the distinction between cases of appointment and cases of assignment:

> Cases involving representatives vary in several respects from those in which jurisdiction is based on assignments: (1) in the former situation, some representative must be appointed before suit can be brought, while in the latter the assignor normally is himself capable of suing in state court; (2) under state law, different kinds of guardians and administrators may possess discrete sorts of powers; and (3) all such representatives owe their appointment to the decree of a state court, rather than solely to an action of the parties.

394 U.S. at 827, 89 S.Ct. at 1490. *See also* Ferrara v. Philadelphia Laboratories, Inc., 272 F.Supp. 1000, 1015–1016 n. 7 (D.Vt.1967), *aff'd mem.,* 393 F.2d 934 (2d Cir. 1968).

In assessing the present weight of Supreme Court precedent, it must be borne in mind that the Court has not spoken on the effectiveness of assignments to destroy diversity jurisdiction

since 1887 and that it has never spoken on the effectiveness of partial assignments to destroy diversity. Moreover, in the years since 1887 the Court has condemned similar practices in a way which makes it clear that the federal courts should be alert to protect their jurisdiction against cleverly-designed maneuvers designed by ingenious counsel to defeat it. Thus, in Ex parte Nebraska, 209 U.S. 436, 28 S.Ct. 581, 52 L.Ed. 876 (1908), the Court refused to accept the appearance of the State of Nebraska as a party plaintiff and its allegation of an interest in the action as conclusive. Instead, the Court held that the federal circuit court properly refused to remand the case to the state court because, on an examination of the entire record, it was apparent that the State of Nebraska was a mere nominal party plaintiff with no substantial interest in the controversy. Likewise, in Wecker v. National Enameling and Stamping Co., 204 U.S. 176, 27 S.Ct. 184, 51 L.Ed. 430 (1907), the plaintiff, in a tort action, joined a co-defendant for the express purpose of destroying diversity. Since the sham was apparent (because the codefendant could not conceivably have been liable), the Supreme Court affirmed the circuit court's refusal to remand to the state court. The Court concludes its opinion with the following words of admonition, applicable here:

> While the plaintiff, in good faith, may proceed in the state courts upon a cause of action which he alleges to be joint, *it is equally true that the Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court as to permit the state courts, in proper cases, to retain their own jurisdiction.*

204 U.S. at 185–186, 27 S.Ct. at 188 (emphasis added). *Accord,* Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144 (1921) [7]. *See also* Pullman Co. v. Jenkins, 305 U.S. 534, 541, 59 S.Ct. 347, 83 L.Ed. 334 (1939); Alabama Great Southern Railway Co. v. Thompson, 200 U.S. 206, 218, 26 S.Ct. 161, 50 L.Ed. 441 (1906); Updike v. West, 172 F.2d 663, 665 (10th Cir.), *cert. denied,* 337 U.S. 908, 69 S.Ct. 1050, 93 L.Ed. 1720 (1949).

This Court is aware that many,[8] though not all [9], federal courts have sus-

---

7. In Wilson, plaintiff attempted the same device as in Wecker. In an apparent extension of Wecker, the Court affirmed the federal district court's retention of jurisdiction without regard to whether the codefendant could have been technically liable, since the device was obviously a sham.

8. *See, e. g.,* Rosecrans v. William S. Lozier, Inc., 142 F.2d 118 (8th Cir. 1944); King v. McMillan, 252 F.Supp. 390 (D.S.C.1966); Heape v. Sullivan, 233 F. Supp. 127 (E.D.S.C.1964); Leshem v. Continental American Life Ins. Co., 219 F.Supp. 504 (S.D.N.Y.1963); Hair v. Savannah Steel Drum Corp., 161 F.Supp. 654 (E.D.S.C.1955); Krenzien v. United Services Life Ins. Co. of Washington, D. C., 121 F.Supp. 243 (D.Kan.1954); Ridgeland Box Mfg. Co. v. Sinclair Refining Co., 82 F.Supp. 274 (E.D.S.C. 1949); Bernblum v. Travelers' Ins. Co., 9 F.Supp. 34 (W.D.Mo.1934); Verschell v. Fireman's Fund Ins. Co., 257 F.Supp. 153 (S.D.N.Y.1966) (dictum). However, only the South Carolina District Court has countenanced the use of a partial assignment to defeat diversity. *See* King v. McMillan, *supra;* Heape v. Sullivan, *supra;* Ridgeland Box Mfg. Co. v. Sinclair Refining Co., *supra,* all involving, as here, the assignment of a 1/100 interest in a plaintiff's claim for the sole purpose of defeating the jurisdiction of the federal court. In Lisenby v. Patz, 130 F.Supp. 670, 672 (E.D.S.C.1955), Judge Hoffman, sitting as a visiting judge, *adverted to the widespread use* of this device throughout the State of South Carolina and noted that in fact a member of the bar had written a book promoting the practice.

9. *See* Phoenix Mutual Life Ins. Co. of Hartford, Conn. v. England, 22 F.Supp. 284 (W.D.Mo.1938); Lisenby v. Patz, *supra.* In a frequently quoted passage, Judge Collett, in Phoenix, stated:

> The facts showing that the assignment was a mere pretext and that its execution was fraudulent, as that term is used without approbium, it must be ignored. To do otherwise would make

tained the use of assignments to defeat diversity. On the other hand, the commentators have been uniformly critical of, and alarmed by, the increasing use of this device. 3A Moore, Federal Practice ¶ 17.05[2], at 156 (2d ed. 1968); Wright, *supra* at 88; Field, *Proposals on Federal Diversity Jurisdiction*, 17 S.Car.L.Rev. 669, 671 (1965); ALI, *Study of the Division of Jurisdiction Between State and Federal Courts*, Commentary on Proposed § 1307 at 104–05 (September 25, 1965 Official Draft); *see also* 44 Harv. L.Rev. 97, 100 (1930); 40 Va.L.Rev. 803, 804 (1954); 34 Tex.L.Rev. 476, 477 (1956); Note, *The Assignment Device in Diversity Cases: The Illusory Right of Removal*, 35 U.Cin.L.Rev. 33, 40 (1966). The American Law Institute has proposed federal legislation which would foreclose this abuse [10]. *See* ALI, *Study, supra* at 21–22. However, this Court is inclined to agree with Professor Moore's observation:

> The proposals in this respect are good ones. But we respectfully suggest that the federal courts should not await legislative action to cure an erroneous doctrine which had been evolved by the federal courts.

Moore, *supra* at 156; *see also id.* ¶17.05[3.–3] at 166.

Only one further comment is necessary. Plaintiffs strenuously argue that the state court is the proper forum to determine whether the assignments are invalid because they were made to defeat federal jurisdiction, citing, *inter alia*, Provident Savings Life Assurance Society v. Ford, *supra* and Leshem v. Continental American Life Ins. Co., *supra*. However, as the Supreme Court noted in Kramer v. Caribbean Mills, Inc., *supra*, 395 U.S. at 829, 89 S.Ct. at 1490, "The existence of federal jurisdiction is a matter of federal, not state, law." Since all the facts relating to the assignments are before this Court, there is no necessity for a remand to the state court for a determination as to their effect upon this Court's jurisdiction. *See* Wilson v. Republic Iron & Steel Co., *supra* 257 U.S. at 97, 42 S.Ct. 35; Phoenix Mutual Life Ins. Co. v. England, *supra* 22 F.Supp. at 286; *see also* Lisenby v. Patz, *supra*. As Professor Moore has observed, "[I]f the federal courts will not protect their jurisdiction from fraudulent evasion it is not likely that state courts will do it for them." Moore, *supra*, ¶ 17.05[2] at 154 [11].

In accordance with the foregoing views, then, the Court conceives it to be both its prerogative and its duty to pierce the appearance of plaintiff Tamblyn's interest in this case. Having done so, it concludes that the essential diversity of citizenship of the parties at bar has not been vitiated by plaintiffs' sham transaction. Were the Court to hold otherwise, it would be by acquiescence a party to the

federal procedure a game in which the statutory rights of parties might be blocked by an adroit and cleverly designed maneuver of his adversary. 22 F.Supp. at 286. In Lisenby Judge Hoffman denied remand on the ground that personal injury claims were not assignable under South Carolina law. In Hair v. Savannah Steel Drum Corp., *supra*, Chief Judge Timmerman in the same district reached a contrary result, holding that Judge Hoffman had misconstrued South Carolina law.

10. In support of its proposals, the American Law Institute points out:
So long as federal diversity jurisdiction exists * * * the need for its assertion may well be greatest when the

plaintiff tries hardest to defeat it. The plaintiff who chooses to sue a noncitizen defendant in a state court may be motivated by the hope that the out-of-state defendant will be at a substantial disadvantage in that court, and the likelihood of such motivation increases with the lengths to which the plaintiff will go to prevent removal to a federal forum.
ALI, Study, *supra* at 104.

11. In a footnote to the quoted passage Professor Moore lists several cases in which state courts have in fact refused to give effect to the defense that a claim was assigned to prevent removal to a federal court. Moore, *supra*, ¶ 17.05 [2] at 154 n. 5.

fraudulent avoidance of its jurisdiction and the substantial frustration of defendant's constitutional and statutory rights. This it declines to be.

Plaintiffs' motion for remand is denied.

It is so ordered.